IN THE SUPREME COURT OF NORTH CAROLINA

No. 419PA16

Filed 2 March 2018

WILLOWMERE COMMUNITY ASSOCIATION, INC., a North Carolina non-profit corporation, and NOTTINGHAM OWNERS ASSOCIATION, INC., a North Carolina non-profit corporation

v.

CITY OF CHARLOTTE, a North Carolina body politic and corporate, and CHARLOTTE-MECKLENBURG HOUSING PARTNERSHIP, INC., a North Carolina non-profit corporation

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 792 S.E.2d 805 (2016), affirming an order of summary judgment entered on 14 April 2015 by Judge Forrest D. Bridges in Superior Court, Mecklenburg County. Heard in the Supreme Court on 12 December 2017.

*Law Office of Kenneth T. Davies, P.C., by Madeline J. Trilling and Kenneth T. Davies, for plaintiff-appellants.*

*Thomas E. Powers III, Assistant City Attorney, and Terrie Hagler-Gray, Senior Assistant City Attorney, for defendant-appellee City of Charlotte.*

*Moore & Van Allen PLLC, by Glenn E. Ketner, III, Anthony T. Lathrop, and William M. Butler, for defendant-appellee Charlotte-Mecklenburg Housing Partnership, Inc.*

BEASLEY, Justice.

In this appeal we consider the extent to which a corporate entity must affirmatively demonstrate compliance with its internal bylaws and governance procedures before it may invoke the jurisdiction of the General Court of Justice. The

Court of Appeals held that plaintiffs lacked standing because they failed to strictly comply with their corporate bylaws in bringing this suit.  We agree with plaintiffs that a showing of strict compliance is not necessary to satisfy the requirements of our standing jurisprudence.  Accordingly, we reverse the decision of the Court of Appeals.

Plaintiffs Willowmere Community Association, Inc. (Willowmere) and Nottingham Owners Association, Inc. (Nottingham) are non-profit corporations representing homeowners in the residential communities of Willowmere and Nottingham located in Charlotte.  Plaintiffs instituted this litigation on 14 March 2014 by filing a Petition for Review in the Nature of Certiorari in Superior Court, Mecklenburg County, challenging the validity of a zoning ordinance enacted by the City of Charlotte and seeking a declaratory judgment that the zoning ordinance is invalid.[1]  The challenged zoning ordinance permits multifamily housing on parcels of land abutting property owned by plaintiffs.  Defendants each filed a response in which they denied the material allegations in the petition and moved to dismiss the action under Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. With leave of the trial court, on 9 July 2014, plaintiffs amended their initial filing under Rule 15(a) of the North Carolina Rules of Civil Procedure to restyle it as a complaint for declaratory judgment, alleging the same causes of action and

---

[1] Plaintiffs' filing originally named the City of Charlotte and Charlotte-Mecklenburg Housing Partnership, Inc. (CMHP) as well as New Dominion Bank, the owner of the parcels subject to the zoning ordinance, as defendants.  New Dominion Bank is not a party to this appeal.

requesting the same principal relief—that the court invalidate the zoning ordinance. Defendant CHMP answered plaintiffs' amended complaint on 17 October 2014, and defendant City of Charlotte filed its new answer on 22 October 2014. Plaintiffs and defendants each filed cross-motions for summary judgment on the issue of the ordinance's validity.

The trial court granted defendants' motions for summary judgment and denied plaintiffs' motion for summary judgment based on the court's conclusion that it lacked subject matter jurisdiction to adjudicate plaintiffs' claims. Specifically, the trial court reasoned that plaintiffs lacked standing to bring the instant suit because they each failed to comply with various provisions in their corporate bylaws when their respective boards of directors decided to initiate this litigation.[2] The trial court relied on the evidence submitted at the summary judgment hearing, which established that neither plaintiff explicitly authorized filing the present suit during a meeting with a quorum of directors present, either in person or by telephone. The trial court concluded that plaintiff Willowmere lacked standing because its board of directors agreed to initiate the lawsuit in an e-mail conversation, which was not an expressly

---

[2] While none of defendants' motions or pleadings to the trial court explicitly raised the issue of plaintiffs' standing to bring suit, the trial court was permitted to consider the threshold question of its own subject-matter jurisdiction in ruling on the parties' cross-motions for summary judgment. *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 86 (1986) ("Every court necessarily has the inherent judicial power to inquire into, hear and determine questions of its own jurisdiction, whether of law or fact, the decision of which is necessary to determine the questions of its jurisdiction." (citing *Burgess v. Gibbs,* 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964))).

authorized substitute for the board's written consent to take action without a formal meeting under Willowmere's corporate bylaws. Similarly, as to plaintiff Nottingham, the trial court concluded that its decision to institute this litigation was defective under its bylaws which require, *inter alia*, a formal meeting with a quorum of directors present (either in person or by telephone), recorded minutes of the meeting reflecting the proceedings of the board of directors, the board's written consent for any action outside of a formal meeting, and an explanation of its action posted by the board within three days after its decision. The trial court's view was that, "[w]hile Plaintiffs' bylaws each permit their directors to sue regarding matters affecting their planned communities, the directors can only act through a meeting or a consent action without a meeting," and "[n]either Willowmere nor Nottingham has met their burden to show that their directors acted to initiate this litigation through one of these means in this case."[3]

Plaintiffs timely appealed to the Court of Appeals, which affirmed the trial court's award of summary judgment to defendants. *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, ___ N.C. App. ___, ___, 792 S.E.2d 805, 812-13 (2016). On 26

---

[3] The trial court also stated that, if it had subject-matter jurisdiction over this matter, it would have invalidated the zoning ordinance because the ordinance was adopted in a manner inconsistent with the requirements of N.C.G.S. § 160A-383 (2015). That issue is not before us, and we express no opinion on the merits of plaintiffs' claim for declaratory judgment or the validity of the zoning ordinance. *See* N.C. R. App. P. 16(a) (limiting this Court's review to the issues presented in the petition for discretionary review and properly presented in the parties' briefs to this Court).

January 2017, this Court allowed plaintiffs' petition for discretionary review. We now reverse the decision of the Court of Appeals.

This Court reviews a trial court's decision dismissing a case for lack of subject matter jurisdiction and a trial court's award of summary judgment de novo. *Mangum v. Raleigh Bd. of Adjust.*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008) (applying de novo review to a motion to dismiss for lack of standing); *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) ("Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " (quoting *Forbis v. Neal,* 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007))).

"As a general matter, the North Carolina Constitution confers standing on those who suffer harm: 'All courts shall be open; [and] every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law . . . .' " *Mangum*, 362 N.C. at 642, 669 S.E.2d at 281-82 (alterations in original) (quoting N.C. Const. art. I, § 18). "The rationale of [the standing] rule is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue." *Stanley v. Dep't of Conservation & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973).

> "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the

outcome of the controversy as to assure that concrete adverseness which sharpens the presentation[s] of issues upon which the court so largely depends for illumination of difficult constitutional questions.' "

*Id.* at 28, 199 S.E.2d at 650 (alteration in original) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 20 L. Ed. 2d 947, 961 (1968) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 7 L. Ed. 2d 663, 678 (1962))). "[W]hether [a] party has standing to attack the constitutionality of a statute is a question of law, which may not be settled by the parties." *Id.* at 28-29, 199 S.E.2d at 650 (first citing *Nicholson v. State Educ. Assistance Auth.*, 275 N.C. 439, 447-48, 168 S.E.2d 401, 406-07 (1969); then citing *State ex rel. Carringer v. Alverson*, 254 N.C. 204, 208, 118 S.E.2d 408, 410-11 (1961)).

"Legal entities other than natural persons may have standing." *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 129, 388 S.E.2d 538, 555 (1990). "To have standing the complaining association or one of its members must suffer some immediate or threatened injury." *Id.* at 129, 388 S.E.2d at 555 (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342, 53 L. Ed. 2d 383, 393 (1977)). "[A]n association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Id.* at 129, 388 S.E.2d at 555 (quoting *Warth v. Seldin*, 422 U.S. 490, 511, 45 L. Ed. 2d 343, 362 (1975)).

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and

> (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 130, 388 S.E.2d at 555 (citing *Wash. State Apple Advert.*, 432 U.S. at 343, 53 L. Ed. 2d at 394). "When an organization seeks declaratory or injunctive relief on behalf of its members, 'it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.' " *Id.* at 130, 388 S.E.2d at 555 (quoting *Warth*, 422 U.S. at 515, 45 L. Ed. 2d at 364).

The Court of Appeals decision below and defendants' arguments to this Court are not based on plaintiffs' failure to meet the elements of associational standing described in *River Birch* or on the contention that plaintiffs have not "alleged . . . a [sufficient] personal stake in the outcome of the controversy."[4] *Stanley*, 284 N.C. at 28, 199 S.E.2d at 650 (quoting *Flast*, 392 U.S. at 99, 20 L. Ed. 2d at 961). Instead, defendants contend that, by failing to follow the internal governance procedures mandated by their respective bylaws, plaintiffs' boards of directors "had no authority to act on behalf of [plaintiffs] in filing and prosecuting this lawsuit." In support of their argument, defendants rely entirely on Court of Appeals cases holding that a

---

[4] In their briefs to the Court of Appeals, defendants additionally argued that plaintiffs lacked standing because they failed to establish an injury in fact stemming from the zoning ordinance and failed to meet the associational standing elements discussed in *River Birch*. However, defendants did not obtain a ruling from the trial court on this issue to preserve it for appellate review, and defendants did not include this issue in the list of issues for discretionary review pursuant to N.C. R. App. P. 15(d). As a result, that issue is not before us, and we decline to address it now. *See* N.C. R. App. P. 16(a).

corporate entity "lacked standing" to bring suit based on (1) a challenge asserted *by a member of the plaintiff entity* that the plaintiff failed to comply with explicit prerequisites to filing suit imposed by the entity's bylaws or (2) the corporate entity's lack of *privity of estate* with the defendants against whom the entity sought to enforce restrictive covenants. *See Beech Mountain Prop. Owners' Ass'n v. Current*, 35 N.C. App. 135, 139, 240 S.E.2d 503, 507 (holding that, because the property owners' association did not, itself, own any property in the development at issue, it "lack[ed] the capacity" to enforce restrictive covenants that run with the land against other property owners in the development); *accord Laurel Park Villas Homeowners Ass'n v. Hodges*, 82 N.C. App. 141, 143-44, 345 S.E.2d 464, 465-66 (1986) (reaffirming the holding in *Beech Mountain* that, without owning property in the community at issue, an incorporated homeowners' association "lacked standing" to enforce restrictive covenants against property owners appearing in their deeds), *disc. rev. denied*, 318 N.C. 507, 349 S.E.2d 861 (1986); *see also Peninsula Prop. Owners Ass'n v. Crescent Res., LLC*, 171 N.C. App. 89, 95-97, 614 S.E.2d 351, 353-56 (2005) (holding that the plaintiff homeowners' association lacked standing when it failed to comply with its bylaw provision requiring a two-thirds majority vote of members to approve filing suit against the defendant on behalf of the association, when this issue was raised by the

defendant property owner *who was a member of the property owners' association*[5]), *appeal dismissed and disc. rev. denied*, 360 N.C. 177, 626 S.E.2d 648 (2005).

Because *Beech Mountain* and *Laurel Park* deal entirely with the plaintiff associations' capacity to enforce restrictive covenants against the defendant property owners, those cases have no applicability here. *See Sedberry v. Parsons*, 232 N.C. 707, 710-11, 62 S.E.2d 88, 90 (1950) ("Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be *enforced by any grantee against any other grantee*, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created.") (emphasis added) (quoting 26 C.J.S. *Deeds* § 167, at 548-49 (1941) (footnotes omitted)). The "standing" at issue in those cases, more appropriately characterized as privity of estate, was the plaintiffs' capacity to enforce restrictive covenants applicable to real property against the defendants and had nothing to do with the corporate bylaws or internal governance procedures of the plaintiff homeowners' associations.[6] *See Runyon v. Paley*, 331 N.C. 293, 302, 416

---

[5] Though not emphasized in the Court of Appeals' analysis in *Peninsula*, the fact that the defendant, Crescent Resources, LLC, owned property in the community governed by the association was noted in the opinion, clear from the record, and briefed by the parties. *See Peninsula*, 171 N.C. App. at 95, 614 S.E.2d at 355 ("Crescent owned . . . two of the nine hundred lots within the [planned residential community] at the time the [plaintiff] filed its complaint" and had "voting rights.").

[6] The plaintiff homeowners' association in *Laurel Park* argued that it had standing to enforce the restrictive covenants against the defendants under N.C.G.S. § 47A-10, which

S.E.2d 177, 184 (1992) ("Thus, where the covenant is sought to be enforced by someone not a party to the covenant or against someone not a party to the covenant, the party seeking to enforce the covenant must show that he has a sufficient legal

expressly permitted the manager or board of directors of a condominium homeowners' association to sue on the association's behalf against a unit owner to enforce, *inter alia*, the association's "bylaws," "administrative rules and regulations," and "covenants, conditions and restrictions" in deeds. 82 N.C. App. at 142, 345 S.E.2d at 465 (quoting N.C.G.S. § 47A-10 (1985)). The Court of Appeals rejected this argument because the complaint named the association as the plaintiff rather than "the manager or board of directors on behalf of the association" and the statute only expressly addressed the authority of the association's manager or board to sue *but not* that of the association itself. *See id.* at 142, 345 S.E.2d at 465; N.C.G.S. § 47A-10. Applying its earlier decision from *Beech Mountain*, the Court of Appeals in *Laurel Park* concluded that the plaintiff homeowners' association could not enforce restrictive covenants against a unit owner in the community because the association itself (the only named plaintiff) did not own property in the community. 82 N.C. App. at 143, 345 S.E.2d at 465.

The Court of Appeals in *Laurel Park* went on to address, in dicta, the plaintiff's further argument that its corporate bylaws gave it authority to bring suit on behalf of the unit owners. *Id.* at 143-44, 345 S.E.2d at 466. The Court of Appeals rejected this argument as well, reasoning that "[t]here is nothing in the articles or the bylaws authorizing persons other than the board, its officers, or the membership to act on behalf of the corporation, and nothing in the record suggesting that any of these authorized this action," and "the statute specifically designates who may sue to enforce the restrictions" but does not designate the association itself. *Id.* at 144, 345 S.E.2d at 466. The reference in *Laurel Park* to the association's bylaws was not, as the Court of Appeals opinion in this case suggests, an instance of a corporation "fail[ing] to comply with [its] own bylaws in bringing [an] action," *Willowmere*, ___ N.C. App. at ___, 792 S.E.2d at 812 (citing *Laurel Park*, 82 N.C. App. at 143-44, 345 S.E.2d at 466), but rather a recognition that the bylaws cannot create corporate authority beyond what was provided by statute. Additionally, the statute the Court of Appeals construed in *Laurel Park* specifically governed condominium unit owners' associations and has no applicability to a homeowners' association of a planned community incorporated under the North Carolina Nonprofit Corporation Act. *Compare* N.C.G.S. § 47C-1-102 (2017) (North Carolina Condominium Act) *with* N.C.G.S. § 47F-1-102 (2017) (North Carolina Planned Community Act).

relationship with the party against whom enforcement is sought to be entitled to enforce the covenant.").

In *Peninsula*, the Court of Appeals held that the property owners' association lacked standing to commence legal proceedings against Crescent Resources, LLC ("Crescent"), the previous developer of the community, because the association failed to comply with an explicit provision in its bylaws that required any litigation against Crescent to be approved by a two-thirds majority vote of all association members entitled to vote. 171 N.C. App. at 94, 97, 614 S.E.2d at 354, 356. But that case is distinguishable from the case at bar because in *Peninsula*, the failure of the plaintiff to comply with the bylaws was raised by Crescent, which was a member of the plaintiff association. *See id.* at 91, 95, 614 S.E.2d at 353, 355. One of the underlying issues raised by the plaintiff in *Peninsula* was the very fact that Crescent, as developer of the community, had drafted the association's bylaws and explicitly included the two-thirds approval provision, which, in the plaintiff's view, contravened Crescent's fiduciary duties as the controlling member of the association when the bylaws were created. *See id.* at 90, 94-95, 614 S.E.2d at 352, 354-55. As a member of the plaintiff association and as the party that was clearly intended to benefit from the two-thirds approval requirement in the bylaws, Crescent was entitled to raise the association's failure to comply with this provision of its bylaws as a bar to the plaintiff's suit. Nonetheless, neither this Court nor the Court of Appeals has ever held (until the Court of Appeals opinion in this case) (1) that a defendant who is *a*

*stranger to the plaintiff association* may assert that the plaintiff's failure to abide by its own bylaws necessitates dismissal of the plaintiff's complaint for lack of standing or (2) that a corporate defendant must affirmatively demonstrate compliance with its bylaws and internal governance procedures in order to have standing.

Nothing in our jurisprudence on standing requires a corporate litigant to affirmatively plead or prove its compliance with corporation bylaws and internal rules relating to its decision to bring suit. *Cf. Mangum*, 362 N.C. at 644, 669 S.E.2d at 283 ("We . . . note that North Carolina is a notice pleading jurisdiction, and as a general rule, there is no particular formulation that must be included in a complaint or filing in order to invoke jurisdiction or provide notice of the subject of the suit to the opposing party." (citing *Mangum v. Surles,* 281 N.C. 91, 99, 187 S.E.2d 697, 702 (1972) ("[I]t is the essence of the Rules of Civil Procedure that decisions be had on the merits and not avoided on the basis of mere technicalities."))). Indeed, since "standing is a 'necessary prerequisite to a court's proper exercise of subject matter jurisdiction,' " *Crouse v. Mineo*, 189 N.C. App. 232, 236, 658 S.E.2d 33, 36 (2008) (quoting *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878, *disc. rev. denied*, 356 N.C. 610, 574 S.E.2d 474 (2002)), and can be challenged "at any stage of the proceedings, even after judgment," *In re T.R.P.*, 360 N.C. 588, 595, 636 S.E.2d 787, 793 (2006) (quoting *Pulley v. Pulley*, 255 N.C. 423, 429, 121 S.E.2d 876, 880 (1961), *appeal dismissed and cert. denied*, 371 U.S. 22, 9 L. Ed. 96 (1962)), adopting such a rule would subject

countless judgments across North Carolina to attack for want of subject matter jurisdiction. We decline to adopt such a rule.

There is no evidence in this case suggesting that any member of the communities of Willowmere or Nottingham opposed plaintiffs' prosecution of this suit. We decline to permit a defendant who is a stranger to an association to invoke the association's own internal governance procedures as an absolute defense to subject matter jurisdiction in a suit filed by the association against that defendant. If a member of either plaintiff association disagrees with the decision to file suit, the proper vehicle to challenge the association's failure to comply with its respective bylaws in making that decision is a suit against the nonprofit corporation brought by the aggrieved member or members of the association or, in certain circumstances, a derivative action. *Cf.* N.C.G.S. § 55A-3-04 (2017) (providing that, "the validity of [a] corporate action shall not be challenged on the ground that the [nonprofit] corporation lacks or lacked power to act" except in a proceeding brought against the corporation "by a member or a director" of the corporation, "the Attorney General," or "[i]n a proceeding by the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director, officer, employee, or agent of the corporation");[7] *id.* § 55A-7-40 (2017) (authorizing and

---

[7] Plaintiffs argued to this Court that defendants are precluded under N.C.G.S. § 55A-3-04 from challenging "the validity of corporate action" to bring this suit because defendants are not listed among the classes of parties authorized to bring such a challenge in section 55A-3-04(b). Because plaintiffs failed to raise this argument before the trial court, it is not

explaining the procedures by which to prosecute a derivative action under the North Carolina Nonprofit Corporation Act). "[T]he General Statutes . . . provide means for *association members* harmed by the improper commencement of this suit to seek redress from the courts if they wish to do so—either by seeking to stay or dismiss the action, or by pursuing a separate action against the appropriate parties for the unauthorized filing of the lawsuit." *Willowmere*, ___ N.C. App. at ___, 792 S.E.2d at 813 (Dietz, J., concurring) (emphasis added); *see* N.C.G.S. § 47F-2-103(a) (2017) (providing that "the declaration, bylaws, and articles of incorporation [of a planned community] form the basis for the legal authority for the planned community to act," and "are enforceable by their terms").

This holding also comports with the reasoning of other jurisdictions that have considered the issue. *See Lake Forest Master Cmty. Ass'n v. Orlando Lake Forest Joint Venture*, 10 So. 3d 1187, 1195-96 (Fla. Dist. Ct. App.) (concluding that a specific Florida statute requiring the approval of a majority of members of a homeowners' association entitled to vote before initiating any litigation involving amounts in

---

properly preserved for our review. *See* N.C. R. App. P. 10(a); *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co., Inc.*, 362 N.C. 191, 194-96, 657 S.E.2d 361, 363-64 (2008). Accordingly, we decline to address whether defendants' assertion that plaintiffs failed to comply with their respective bylaws in their decision to bring this action amounts to a challenge that their action was *ultra vires* or "[in]valid[ ] . . . on the ground that the corporation lacks or lacked power to act." *See* N.C.G.S. § 55A-3-04. It is sufficient to say that, while a member of either plaintiff association could permissibly challenge the association's failure to comply with its bylaws in instituting this suit (regardless of whether the challenge falls within the scope of N.C.G.S. § 55A-3-04), defendants may not.

controversy over $100,000 was for the protection of members *and could not be asserted as an affirmative defense to suit* by a non-member defendant), *review denied*, 23 So. 3d 1182 (Fla. 2009); *Little Can. Charity Bingo Hall Ass'n v. Movers Warehouse, Inc.*, 498 N.W.2d 22, 24 (Minn. Ct. App. 1993) ("[A] third party has no power to challenge corporate action based on [a violation of the entity's bylaws]."); *see also Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 249 (S.D.N.Y.) ("A third-party, who is not a member of the association or corporation nor a party to the bylaws, lacks standing to bring suit against an organization for violation of its bylaws."), *aff'd*, 80 F. App'x 722 (2d Cir. 2003); *Port Liberte II Condo. Ass'n v. New Liberty Residential Urban Renewal Co.*, 435 N.J. Super. 51, 66, 86 A. 3d 730, 739 (App. Div. 2014) (holding that the plaintiff condominium homeowners' association had standing to sue the defendant developers and various contractors despite procedural defects in the approval of the litigation based, in part, on the logic that the defendants could not enforce the bylaws of the association, including one requiring members to authorize litigation, because they were not members of the association).

Accordingly, we hold that, despite plaintiffs' failure to strictly comply with their respective bylaws and internal governance procedures in their decision to initiate this suit, they nonetheless "possess a 'sufficient stake in an otherwise justiciable controversy' to confer jurisdiction on the trial court to adjudicate this legal dispute." *Willowmere*, ___ N.C. App. at ___, 792 S.E.2d at 813 (quoting *Peninsula*, 171 N.C. App. at 92, 614 S.E.2d at 353). For the reasons stated above, the decision

of the Court of Appeals is reversed, and this case is remanded to that court for further remand to the trial court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.