Gao v. Sinova Specialties, Inc., 2018 NCBC 69.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 16 CVS 6709 |

JIANXUN "BILL" GAO, individually, and derivatively on behalf of Sinova Specialties, Inc.,

        Plaintiff,

v.

SINOVA SPECIALTIES, INC., a North Carolina Corporation; JOHANNES HECKMANN; YAN "ELLEN" LIU; NEW SHORE, INC., a North Carolina Corporation,

        Defendants,

SINOVA SPECIALTIES, INC., a North Carolina Corporation,

        Nominal Defendant.

**ORDER AND OPINION ON PLAINTIFF'S MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(1)**

1. **THIS MATTER** is before the Court on Plaintiff's motions to dismiss the counterclaims of Defendant/Nominal-Defendant Sinova Specialties, Inc. ("Sinova US"), Defendant Johannes Heckmann ("Heckmann"), and Defendant Yan "Ellen" Liu ("Liu") (collectively, the "Counterclaimants") pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure ("Rule(s)"). Having considered the motions, the briefs, and the arguments of counsel at a hearing on the motions[1], the Court **DENIES**

---

[1] At the hearing, the Court also heard arguments of counsel on Plaintiff's motions to dismiss pursuant to Rule 12(b)(6) and Plaintiff's motion for summary judgment. The Court is issuing separate orders and opinions on these motions.

Plaintiff's motion to dismiss Sinova US's counterclaims and **DENIES in part** and

**GRANTS in part** Plaintiff's motion to dismiss Heckmann's and Liu's counterclaims.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jeffrey E. Oleynik, Jessica Thaller-Moran, and Ryan C. Fairchild, and Greenberg Traurig, LLP, by Gabriel Aizenberg, Andrew J. Enschedé, and Lucia Marker-Moore, for Plaintiff.*
>
> *Erwin, Bishop, Capitano & Moss, P.A., by Joseph W. Moss, Jr., for Defendant/Nominal-Defendant Sinova Specialties, Inc.*
>
> *Essex Richards, PA, by Marc E. Gustafson, for Defendants Johannes Heckmann and New Shore, Inc.*
>
> *Higgins & Owens, PLLC, by Sara W. Higgins, for Defendant Yan "Ellen" Liu.*

Robinson, Judge.

## I.    FACTUAL BACKGROUND

2.    The following factual background is taken from the pleadings and the affidavits submitted in support of and in opposition to the motions.

### A.    <u>The Parties</u>

3.    Sinova US is a North Carolina corporation with its principal place of business in Matthews, North Carolina.  (Verified Am. Compl. ¶ 9, ECF No. 56.1 ["Am. Compl."]; Heckmann's Am. Answer, Affirmative Defenses & Countercls. ¶ 9, ECF No. 221 ["Heckmann's Answer"]; Liu's Am. Answer, Affirmative Defenses & Countercls. ¶ 9, ECF No. 215 ["Liu's Answer"]; Sinova US's Answer to Am. Compl. ¶ 9, ECF No. 195 ["Sinova US's Answer"].)  Sinova US was formed in 2009 for the purpose of selling chemical products.  (Heckmann's Am. Countercls. ¶¶ 8–10, ECF No. 267; Heckmann's

Answer ¶ 1; Liu's Am. Countercls. ¶¶ 8–10, ECF No. 268; Liu's Answer ¶ 1; Sinova US's Second Am. Countercls. ¶¶ 8–10, ECF No. 266.)

4. Plaintiff Jianxun "Bill" Gao ("Gao") owns a 25% interest in, and is a director and officer of, Sinova US. (Aff. Jianxun "Bill" Gao ¶ 1, ECF No. 212.3 ["Gao Aff."]; *see* Aff. Johannes Heckmann (April 26, 2017) ¶¶ 3–4, 16, ECF No. 228.2 ["Heckmann Aff."].)

5. Heckmann owns a 45% interest in, and is the president and a director of, Sinova US. (Heckmann Aff. ¶ 3.)

6. Liu owns a 30% interest in, and is the secretary and a director of, Sinova US. (Heckmann Aff. ¶ 4.)

**B.** **Related Entities**

7. In 2011, Feng Sujin, Zhang Lanjun, and Wang Shufen, Gao's mother-in-law, formed Sinova Chemicals Limited ("Sinova HK"), a Hong Kong corporation. (Heckmann's Am. Countercls. ¶ 3; Heckmann's Answer ¶ 14; Liu's Am. Countercls. ¶ 3; Liu's Answer ¶ 14; Sinova US's Second Am. Countercls. ¶ 3; Sinova US's Answer ¶ 14.) In September 2014, Heckmann bought Feng Sujin's 40% interest in Sinova HK, and in October 2015, Liu bought Zhang Lanjun's 30% interest in Sinova HK. (Heckmann's Answer ¶ 14; Liu's Answer ¶ 14; Sinova US's Answer ¶ 14.) As a result of these later transactions, the owners of Sinova HK are Gao's mother-in-law (30%), Heckmann (40%), and Liu (30%).

8. In 2012, Gao, Liu, and Feng Sujin formed Sinova Specialties, Inc. (Beijing) ("Sinova Beijing"), a Chinese corporation. (Heckmann's Am. Countercls. ¶ 3;

Heckmann's Answer ¶ 15; Liu's Am. Countercls. ¶ 3; Liu's Answer ¶ 15; Sinova US's Second Am. Countercls. ¶ 3; Sinova US's Answer ¶ 15.) Feng Sujin entrusted Heckmann to manage Sinova Beijing for her. (Heckmann's Answer ¶ 15; Liu's Answer ¶ 15; Sinova US's Answer ¶ 15.)

9. Sinova US, Sinova Beijing, and Sinova HK are collectively referred to herein as the "Sinova Companies."

10. Xin Yong Zhong Da Chemicals ("XYZD") is a Chinese corporation indirectly controlled by Heckmann, Liu, and Gao through Liu's mother, Gao's mother-in-law, and a third party. (Heckmann's Am. Countercls. ¶ 4; Liu's Am. Countercls. ¶ 4; Sinova US's Second Am. Countercls. ¶ 4.) In 2012, XYZD exported chemical compounds on behalf of Sinova US before Sinova Beijing was formed. (Heckmann's Am. Countercls. ¶ 4; Liu's Am. Countercls. ¶ 4; Sinova US's Second Am. Countercls. ¶ 4.)

11. The Sinova Companies and XYZD are collectively referred to herein as the "Sinova Group."

C. **Business Operations**

12. The responsibilities of Sinova US were shared by Heckmann, Liu, and Gao. (Heckmann's Am. Countercls. ¶ 7; Liu's Am. Countercls. ¶ 7; Sinova US's Second Am. Countercls. ¶ 7.) Heckmann was primarily responsible for sales, Liu was primarily responsible for operations, and Gao was primarily responsible for the chemistry and technical aspects of the business. (Heckmann's Am. Countercls. ¶ 7; Liu's Am. Countercls. ¶ 7; Sinova US's Second Am. Countercls. ¶ 7.)

13.     From 2009 to 2012, Sinova US's operations consisted of assisting Sinomax Solutions Inc. ("SMBJ"), a separate Chinese company in which neither Heckmann, Liu, nor Gao owned an interest, with its sales of the chemical compounds "PP," "BFA," and "TSS" in the United States and Europe.  (Heckmann's Am. Countercls. ¶ 9; Liu's Am. Countercls. ¶ 9; Sinova US's Second Am. Countercls. ¶ 9.)  In 2012, the Sinova Companies purchased SMBJ's business, including SMBJ's customer lists and the licensing rights to PP, BFA, and TSS, and Sinova US began selling chemical compounds in the United States and Europe on behalf of the Sinova Companies.  (Heckmann's Am. Countercls. ¶ 10; Liu's Am. Countercls. ¶ 10; Sinova US's Second Am. Countercls. ¶ 10.)

14.     From May 2012 through early 2014, Gao operated a lab in Beijing for the benefit of the Sinova Group and for the purpose of creating products for sale by the Sinova Companies.  (Heckmann's Am. Countercls. ¶ 12; Liu's Am. Countercls. ¶ 12; Sinova US's Second Am. Countercls. ¶ 12.)  The Sinova Group paid all the costs of the lab, which included the cost of an office lease, equipment, supplies, reagents, testing, and salaries of approximately eleven employees.  (Heckmann's Am. Countercls. ¶ 13; Liu's Am. Countercls. ¶ 13; Sinova US's Second Am. Countercls. ¶ 13.)

### D.     Agreements

15.     On or about September 16, 2012, the Sinova Group, Heckmann, Liu, and Gao entered into a "CDA and Non-Compete Agreement" (the "CDA").[2]  (Am. Compl.

---

[2] Most of the agreements and other documents involved in this case were originally written in Chinese and then translated into English, often with grammar and sentence structures that are difficult to understand.

Ex. A.) The CDA provides that "[t]he three persons in this agreement" are Heckmann, Liu, and Gao, and that "[t]he company in this agreement is Sinova Specialties Inc. (Beijing) and its related company [sic] in USA, HK and China." (Am. Compl. Ex. A, at 1.) The CDA imposes an obligation on each of the individual parties to the agreement to "keep the secrecy of the company" and to "not leak the market, technology and operation secrecy to any third party directly or indirectly at any time." (Am. Compl. Ex. A, at 2.) The CDA further provides that "[a]nyone who breaches the [CDA] shall pay RMB 5million to the company. At the same time, he/she shall compensate all the lost [sic] that caused [sic] to the company by his/her violating the [CDA]." (Am. Compl. Ex. A, at 3–4.) The CDA is signed by Sinova Beijing, Heckmann, Liu, and Gao. (Am. Compl. Ex. A, at 4.)

16. Also on or about September 16, 2012, Heckmann, Liu, and Gao entered into a board agreement (the "2012 Board Agreement"). (Am. Compl. Ex. B.) The 2012 Board Agreement states that the shareholders of Sinova US and Sinova Beijing "are allowed to set up non-related other companies but are not allowed to do business compete [sic] with [Sinova US or Sinova Beijing]. The other companies are not allowed to provide or accept the product or service of [Sinova US or Sinova Beijing]." (Am. Compl. Ex. B, at 1.)

17. In the middle of 2013, Heckmann, Liu, and Gao negotiated the separation of their business interests. (Heckmann's Am. Countercls. ¶ 26; Liu's Am. Countercls. ¶ 26; Sinova US's Second Am. Countercls. ¶ 26.) The parties extensively negotiated which chemical products would continue to be manufactured and sold by the Sinova

Group (the "Common Projects"). (Heckmann's Am. Countercls. ¶ 27; Liu's Am. Countercls. ¶ 27; Sinova US's Second Am. Countercls. ¶ 27.) Heckmann, Liu, and Gao agreed that the Common Projects were to include the Sinova Group's marketable and profitable chemical compounds and those chemical compounds that were still under development with a potential upside as of January 2014. (Heckmann's Am. Countercls. ¶¶ 28–29; Liu's Am. Countercls. ¶¶ 28–29; Sinova US's Second Am. Countercls. ¶¶ 28–29.) To determine which projects should be designated as Common Projects, Heckmann and Liu asked Gao to identify all the projects that had been run or developed in the lab. (Heckmann's Am. Countercls. ¶ 33; Liu's Am. Countercls. ¶ 33; Sinova US's Second Am. Countercls. ¶ 33.) Counterclaimants allege that, over several months, Heckmann, Liu, and Gao discussed what Heckmann and Liu were led by Gao to believe were all of the projects being worked on in the lab. (Heckmann's Am. Countercls. ¶ 32; Liu's Am. Countercls. ¶ 32; Sinova US's Second Am. Countercls. ¶ 32.)

18. On or about January 15, 2014, Heckmann, Liu, and Gao entered into a board agreement (the "2014 Board Agreement"). (Gao Aff. Ex. C.) The 2014 Board Agreement states that the participants, whom are identified as Heckmann, Liu, and Gao, agree to "[k]eep minimum necessary budget for operation [sic] the common projects in [Sinova Beijing]" and to "[k]eep funding available for common projects at $3.5 million." (Gao Aff. Ex. C, ¶¶ 3–4.) The 2014 Board Agreement provides that "[a]ll projects that are not common projects are to be done outside of any common office facilities and at their own risk" and specifically identifies seven Common

Projects. (Gao Aff. Ex. C, ¶¶ 3, 7.) The 2014 Board Agreement further provides that "[e]ach board member will adhere to professional rules of conduct toward each other and promises to promote the common projects to the best of their abilities and not to cause adverse effects to another board member. Should such action occur damages may be sought." (Gao Aff. Ex. C, ¶ 11.) Additionally, the 2014 Board Agreement expressly incorporates the prior confidentiality and non-compete obligations set forth in the CDA and the 2012 Board Agreement. (Gao Aff. Ex. C, ¶ 2.)

19. Counterclaimants allege that, unbeknownst to them, Gao used the lab to develop chemical compounds—including a compound referred to as "ANT"—for the benefit of himself and companies other than any of the entities within the Sinova Group. (Heckmann's Am. Countercls. ¶¶ 21–22; Liu's Am. Countercls. ¶¶ 21–22; Sinova US's Second Am. Countercls. ¶¶ 21–22.) Counterclaimants further allege that, during Heckmann, Liu, and Gao's negotiations, Gao concealed that he had developed ANT in the lab and that it was, or had the potential to be, commercially viable. (Heckmann's Am. Countercls. ¶¶ 37, 39; Liu's Am. Countercls. ¶¶ 37, 39; Sinova US's Second Am. Countercls. ¶¶ 37, 39.) Counterclaimants contend that, as a result, ANT was not included as a Common Project in the 2014 Board Agreement, and Gao sold ANT for personal gain through entities owned or controlled by him. (Heckmann's Am. Countercls. ¶¶ 44–45, 52; Liu's Am. Countercls. ¶¶ 44–45, 52; Sinova US's Second Am. Countercls. ¶¶ 44–45, 52.)

## II. PROCEDURAL HISTORY

20. The Court recites only those portions of the procedural history relevant to its determination of the motions.

21. Gao filed his complaint on April 8, 2016 and an amended complaint on July 8, 2016. The amended complaint asserts direct claims for judicial dissolution of Sinova US, inspection of Sinova US's corporate records, breach of fiduciary duty, constructive fraud, and unjust enrichment.[3] (Am. Compl. 37, 40, 43, 45, 47.) The amended complaint asserts derivative claims on behalf of Sinova US for breach of fiduciary duty, constructive fraud, corporate waste, unjust enrichment, and breach of contract. (Am. Compl. 41, 44, 46−48.)

22. This action was designated as a mandatory complex business case by order of the Honorable Mark Martin, Chief Justice of the Supreme Court of North Carolina, dated April 11, 2016, (ECF No. 4), and assigned to the Honorable Louis A. Bledsoe, III by order of then Chief Business Court Judge James L. Gale dated April 14, 2016, (ECF No. 5). This case was later reassigned to the undersigned by order dated July 5, 2016. (ECF No. 54.)

23. All Defendants answered the amended complaint, and Sinova US, Heckmann, and Liu asserted counterclaims against Gao. (ECF Nos. 97, 195, 215, 221.)

---

[3] The amended complaint also asserts a direct claim for corporate waste, which the Court dismissed with prejudice by order and opinion dated December 21, 2016. (ECF No. 188.)

24.    On March 2, 2017, Sinova US filed its first amended counterclaims.  (ECF No. 207.)

25.    On March 14, 2017, Gao filed his motion to dismiss Sinova US's first amended counterclaims pursuant to Rule 12(b)(1) for lack of standing and a brief in support.  (ECF No. 212.)

26.    On June 30, 2017, Sinova US filed its second amended counterclaims[4], and Heckmann and Liu each filed first amended counterclaims.  Sinova US, Heckmann, and Liu each assert counterclaims against Gao for fraud and breach of contract—including the CDA, the 2012 Board Agreement, and the 2014 Board Agreement. (Heckmann's Am. Countercls. 18, 20; Liu's Am. Countercls. 18, 20; Sinova US's Second Am. Countercls. 24, 26.)  Sinova US asserts additional counterclaims against Gao for breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, and unjust enrichment.  (Sinova US's Second Am. Countercls. 22−23, 29−30.)

27.    On July 28, 2017, Gao filed his motion to dismiss Heckmann's and Liu's amended counterclaims pursuant to Rule 12(b)(1) for lack of standing and a brief in support.  (ECF No. 271.)

28.    The motions have been fully briefed, and the Court held a hearing on the motions on December 6, 2017.  The motions are now ripe for resolution.

---

[4] Although Gao and Sinova US fully briefed Gao's motion to dismiss Sinova US's counterclaims before Sinova US filed its second amended counterclaims, the parties informed the Court that the filing of Sinova US's second amended counterclaims did not moot the motion.  (*See* ECF No. 264.)

## III. LEGAL STANDARD

29. Gao's motions to dismiss are based on the notion that Counterclaimants do not have standing to bring the claims in question and therefore the Court does not have subject matter jurisdiction over the claims. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002). A court shall dismiss the action when it appears that the court lacks subject matter jurisdiction. N.C. Gen. Stat. § 1A-1, Rule 12(h)(3). A court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009).

## IV. ANALYSIS

### A. Gao's Motion to Dismiss Sinova US's Counterclaims

30. Gao argues that Sinova US lacks standing to assert its counterclaims because: (a) its board of directors failed to comply with Sinova US's bylaws before asserting its counterclaims; (b) the 2014 Board Agreement bars Sinova US from expending funds on a lawsuit; and (c) Sinova US is merely a nominal defendant and thus may not bring affirmative claims against Gao. (Pl.'s Mem. Supp. Mot. Dismiss Sinova US's Am. Countercls. Pursuant to Rule 12(b)(1), at 6−9, ECF No. 212.1 ["Pl.'s Mem. Supp. Sinova US Mot."]; Pl.'s Reply Mem. Supp. Mot. Dismiss Sinova US's Am. Countercls. Pursuant to Rule 12(b)(1), at 7−10, ECF No. 237 ["Pl.'s Reply Mem. Supp. Sinova US Mot."].) The Court addresses each of these arguments in turn.

31. Standing generally refers to a party's right to have a court decide the merits of a dispute. *Neuse River Found., Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52. "[S]tanding to sue means simply that the party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Newton v. Barth*, 788 S.E.2d 653, 659 (N.C. Ct. App. 2016) (alteration in original). Sinova US, as the counterclaimant, has the burden of proving that it has standing to assert the claims it has brought against Gao. *Neuse River Found., Inc.*, 155 N.C. App. at 113, 574 S.E.2d at 51.

32. Gao first argues that Sinova US lacks standing to assert its counterclaims because its board of directors failed to comply with the bylaws before asserting counterclaims. (Pl.'s Mem. Supp. Sinova US Mot. 6–7.) The bylaws vest control over the business and affairs of Sinova US in the board of directors. (Gao Aff. Ex. A, § 2.1.) Under the bylaws, the board may take action by voting at regular or special meetings, or by unanimous written consent. (Gao Aff. Ex. A, §§ 2.3–2.4, 2.8.) Although regular meetings may be held without notice, Sinova US's board has never held regular meetings. (Gao Aff. ¶ 3.) Special meetings of the board require five days' advance notice. (Gao Aff. Ex. A, § 2.4.)

33. Sinova US filed its counterclaims on January 20, 2017 and its first amended counterclaims on March 2, 2017. As of March 2, 2017, the board had neither held a meeting at which a vote was taken to approve Sinova US filing counterclaims against Gao nor unanimously consented in writing to such action. (Gao Aff. ¶¶ 5–8.) As a result, Gao argues that Sinova US lacks standing, relying principally on two Court of

Appeals cases, one of which was recently reversed by our Supreme Court. *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, 792 S.E.2d 805 (N.C. Ct. App. 2016), *rev'd*, 370 N.C. 553, 809 S.E.2d 558 (2018); *Peninsula Prop. Owners Ass'n, Inc. v. Crescent Res., LLC*, 171 N.C. App. 89, 614 S.E.2d 351 (2005).

34.     The Court concludes that it is immaterial whether the board complied with the bylaws prior to asserting its original and first amended counterclaims because the board complied with the bylaws prior to Sinova US filing its second amended counterclaims. The record indicates that, on April 21, 2017—after Sinova US filed its counterclaims and first amended counterclaims—the board held a special meeting, in compliance with the bylaws' procedural requirements, to ratify Sinova US's engagement of counsel to represent it in this litigation and its assertion of counterclaims against Gao. (Heckmann Aff. ¶¶ 15–16.) A majority of the board approved a resolution ratifying Sinova US's engagement of counsel and the filing of counterclaims against Gao. (Heckmann Aff. ¶¶ 15–16.) After the April 21, 2017 meeting, Sinova US filed its second amended counterclaims.

35.     Therefore, because the board subsequently complied with its bylaws and ratified Sinova US's engagement of counsel and the counterclaims—and because Sinova US filed its second amended counterclaims after the board approved filing the counterclaims—the Court concludes that, despite the failure of the board to comply with Sinova US's bylaws prior to first filing its counterclaims, Gao's first argument against standing fails as to Sinova US's second amended counterclaims. *See Willowmere Cmty. Ass'n, Inc.*, 370 N.C. at 562, 809 S.E.2d at 565 ("[D]espite plaintiffs'

failure to strictly comply with their respective bylaws and internal governance procedures in their decision to initiate this suit, they nonetheless possess a sufficient stake in an otherwise justiciable controversy to confer jurisdiction on the trial court to adjudicate this legal dispute." (quotation marks omitted)).

36. Gao's second argument is that Sinova US lacks standing because the 2014 Board Agreement prohibits Sinova US from expending funds on anything other than "Common Projects," which would by definition not include a lawsuit against Gao. (Pl.'s Mem. Supp. Sinova US Mot. 8−9.)

37. "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *RME Mgmt., LLC v. Chapel H.O.M. Assocs., LLC*, 795 S.E.2d 641, 645 (N.C. Ct. App. 2017). "Since the object of construction is to ascertain the intent of the parties, the contract must be considered as an entirety. The problem is not what the separate parts mean, but what the contract means when considered as a whole." *42 E., LLC v. D.R. Horton, Inc.*, 218 N.C. App. 503, 513, 722 S.E.2d 1, 8 (2012) (quoting *Jones v. Casstevens*, 222 N.C. 411, 413−14, 23 S.E.2d 303, 305 (1942)). The contract is to be construed consistently with reason and common sense. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012). When a contract is plain and unambiguous, the Court can determine the parties' intent as a matter of law. *42 E., LLC*, 218 N.C. App. at 513, 722 S.E.2d at 8. If a contract is ambiguous, however, interpretation of the contract is a question of fact for the jury. *Variety Wholesalers, Inc.*, 365 N.C. at 525, 723 S.E.2d at 748. An ambiguity exists

when the effect of provisions is uncertain or capable of several reasonable interpretations. *Id.*

38.     The Court concludes that, even assuming Gao is correct that a lawsuit against him would not be a "Common Project," the 2014 Board Agreement does not unambiguously prohibit Sinova US from expending funds on anything other than Common Projects.  First, the 2014 Board Agreement states that Heckmann, Liu, and Gao agree to "[k]eep minimum necessary budget for operation [sic] the common projects in [Sinova Beijing,]" not Sinova US.  (Gao Aff. Ex. C, ¶ 3.)  Second, the agreement further states that Heckmann, Liu, and Gao agree to "[k]eep funding available for common projects at $3.5 million.  This will pay for expenses incurred for common projects only *against receipts or signed PO*."  (Gao Aff. Ex. C, ¶ 4 (emphasis added).)  Sinova US, like any company, presumably has expenses in addition to the direct expenses it incurs in developing Common Projects, such as overhead expenses.  Under Gao's interpretation, Heckmann, Liu, and Gao, individually, would be responsible for paying all overhead expenses incurred by Sinova US.

39.     The Court believes that the 2014 Board Agreement can reasonably be interpreted as limiting the projects for which Sinova US will provide funding, rather than limiting all company expenditures to only Common Project expenses—that is, the $3.5 million budget may only be used to pay direct expenses incurred in developing Common Projects, and not for any direct expenses incurred by Heckmann, Liu, or Gao in their pursuit of non-common projects.  This interpretation is further supported by paragraph 9 of the 2014 Board Agreement, which states that "[i]f cash

flow needed *for running common project* is above $3.5 million," Heckmann, Liu, and Gao should make an additional investment and, if a shareholder does not do so, then that shareholder forfeits his/her right to the profits from the common project(s) in which he/she did not further invest. (Gao Aff. Ex. C, ¶ 9 (emphasis added).)

40.     Alternatively, the Court concludes that, even assuming *arguendo* that the 2014 Board Agreement prohibits Sinova US from expending funds on anything other than Common Projects, a failure by Sinova US to comply with this provision by funding this litigation does not affect Sinova US's standing. Contrary to the bylaw provisions at issue in *Peninsula* and *Willowmere*, which concerned the prerequisites to the corporation taking action—specifically, initiating a lawsuit—the provision at issue here concerns whether the corporation may pay for the prosecution of counterclaims, rather than whether or how the corporation may act to bring counterclaims.

41.     Gao's third argument is that Sinova US lacks standing because it is merely a nominal defendant as to Gao's judicial dissolution claim and derivative claims and, as such, cannot defend itself against these claims. Gao argues that because Sinova US cannot defend itself against Gao's claims, it follows that Sinova US cannot assert counterclaims against Gao. (Pl.'s Reply Mem. Supp. Sinova US Mot. 7−10.)

42.     In general, a corporation may not defend itself against a derivative action on the merits. *Swenson v. Thibaut*, 39 N.C. App. 77, 101, 250 S.E.2d 279, 294 (1978). This is because a derivative action seeks to enforce the rights of a corporation and any recovery accrues to the corporation, rather than the shareholder-plaintiff. *Id.* at

98−99, 250 S.E.2d at 293. As a result, a corporation in a derivative suit, although designated as a nominal defendant, is generally aligned as a party plaintiff. *Id.* at 98−101, 250 S.E.2d at 293−94.

43. Nonetheless, that a corporation in a derivative suit cannot defend itself on the merits does not resolve the issue of whether a corporation in a derivative suit may assert counterclaims against the shareholder-plaintiff. This appears to be an issue of first impression in North Carolina, and a novel issue that has not often been addressed in other jurisdictions. Federal decisions that have addressed this issue have considered it in the context of Rule 13 of the Federal Rules of Civil Procedure ("Federal Rule(s)")—specifically, whether the shareholder-plaintiff is an "opposing party" such that a counterclaim may be asserted against him. *See* Fed. R. Civ. P. 13(a)−(b) (providing that a pleading must/may state a counterclaim against an "opposing party"); N.C. Gen. Stat. § 1A-1, Rule 13(a)−(b) (same). The general rule articulated by these decisions is that "a stockholder suing derivatively is not subject to a counterclaim of the corporation that alleges an individual liability to the corporation; in the language of [Federal Rule 13], the plaintiff individually is not thought an 'opposing party' since the plaintiff stockholder sues derivatively to vindicate a corporate right." *Burg v. Horn*, 37 F.R.D. 562, 563 (E.D.N.Y. 1965). This rule, however, has exceptions. *Id.* Federal courts have held that this rule does not apply "in the case of a closely held corporation where the substance of the action was to determine the rights of the three individual [shareholders] against one another." *Berger v. Reynolds Metals Co.*, 39 F.R.D. 313, 314−15 (E.D. Pa. 1966) (declining to

dismiss the defendant-corporation's counterclaim against the shareholder-plaintiff in a derivative action); *Burg*, 37 F.R.D. at 564 (same). These decisions reason in part that to conclude that the shareholder-plaintiff is not an opposing party "is to place form over substance and to undermine and thwart the salient purpose of [Federal] Rule 13." *Berger*, 39 F.R.D. at 315; *see also Burg*, 37 F.R.D. at 564 ("[I]t is not important to determine whether the 'counterclaim' should be styled a 'crossclaim,' it must follow that the claim presented as a 'counterclaim' belongs in the present suit." (citation omitted).)

44. The Court finds persuasive the reasoning of the federal courts that have confronted this issue and, in the absence of contrary case law from our appellate courts, concludes that Sinova US may assert counterclaims against Gao. As Gao has conceded, Sinova US could initiate a separate lawsuit against Gao, (Pl.'s Sur-Surreply Supp. Mot. Dismiss 3, ECF No. 265), and the Court sees no reason why Sinova US should be prohibited from asserting its claims against Gao in this action, whether they be styled as counterclaims or crossclaims, as opposed to requiring Sinova US to file a separate action against Gao. Therefore, the Court concludes that Sinova US has standing to assert its counterclaims against Gao, and Gao's motion to dismiss as to Sinova US's counterclaims is denied.

**B.** **Gao's Motion to Dismiss Heckmann's and Liu's Counterclaims**

45. Gao argues that Heckmann and Liu lack standing because their counterclaims are derivative claims that must be brought on behalf of Sinova US.

(Pl.'s Mem. Supp. Mot. Dismiss Am. Countercls. of Liu & Heckmann Pursuant to Rule 12(b)(1), at 3, ECF No. 271.1.)

46. It is a well-settled general principle of North Carolina law that shareholders of a corporation cannot pursue individual causes of action for wrongs or injuries to the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); *Corwin v. British Am. Tobacco PLC*, 796 S.E.2d 324, 338 (N.C. Ct. App. 2016). There are two exceptions: (1) when there is a special duty between the wrongdoer and the shareholder; and (2) when the shareholder suffered an injury separate and distinct from the injury suffered by the corporation and the other shareholders. *Barger*, 346 N.C. at 658, 488 S.E.2d at 219; *Corwin*, 796 S.E.2d at 338.

47. For the special duty exception to apply, "the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual"—a duty that was personal to the shareholder and separate and distinct from the fiduciary duty owed to the corporation. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220. In *Barger*, our Supreme Court set forth an illustrative, non-exclusive list of situations in which a special duty may be found. Such list included when the wrongful actions of the party induced plaintiff to become a shareholder, the wrongdoer violated his fiduciary duty to the shareholder, the wrongdoer performed individualized services directly for the shareholder, and the wrongdoer undertook to advise shareholders independently of the corporation. *Id.*

### 1. Breach of Contract

48. In their breach of contract counterclaims, Heckmann and Liu allege that Gao breached the 2012 Board Agreement, the 2014 Board Agreement, and the CDA.

49. Sinova US is not a party to either the 2012 Board Agreement or the 2014 Board Agreement—indeed, Gao argues this point in support of his motion to dismiss Sinova US's breach of contract counterclaim pursuant to Rule 12(b)(6). (Pl.'s Mem. Supp. Mot. Dismiss Second Am. Counterclaims of Sinova US Pursuant to Rule 12(b)(6), at 3–5, ECF No. 273.1.) Heckmann and Liu, however, are parties to the 2012 and 2014 Board Agreements, and a special duty may arise from contract. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220; *Dawson v. Atlanta Design Assocs., Inc.*, 144 N.C. App. 716, 719, 551 S.E.2d 877, 880 (2001). Therefore, the Court concludes, based on its review of these documents, that the 2012 and 2014 Board Agreements between Heckmann, Liu, and Gao create a special duty between the parties thereto and, as such, Heckmann and Liu have standing to assert a direct claim for breach of these agreements. *See Dawson*, 144 N.C. App. at 719, 551 S.E.2d at 880 ("Plaintiff's individual contract with Defendants creates a 'special duty' running from Defendants to Plaintiff."); *Grasinger v. Williams*, 2015 NCBC LEXIS 4, at *14–15 (N.C. Super. Ct. Jan. 15, 2015) (concluding that shareholder-plaintiffs had standing to assert a direct claim for breach of an agreement requiring that shareholders be provided with notice of a proposed sale of the company).

50. Conversely, the record before the Court shows that Sinova US is a party to the CDA. The CDA is on Sinova US letterhead, states that "[t]he company in this

agreement is Sinova Specialties Inc. (Beijing) *and its related company* [sic] *in USA, HK and China*[,]" and is signed by Sinova Beijing. (Am. Compl. Ex. A (emphasis added).) Further, the CDA creates duties that are owed to the company and provides that anyone who breaches the agreement "shall pay RMB 5million to *the company*." (Am. Compl. Ex. A, ¶¶ 3, 5 (emphasis added).) Thus, the Court concludes that Heckmann and Liu have failed to show that they have standing to assert a direct claim for breach of the CDA pursuant to the special duty exception.

51. For the special injury (as opposed to special duty) exception to apply, the injury must be peculiar or personal to the shareholder. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220. "[A] plaintiff must show that its particular injury was 'separate and distinct from the injury sustained by the other shareholders or the corporation itself.'" *Raymond James Capital Partners, L.P. v. Hayes*, 789 S.E.2d 695, 702 (N.C. Ct. App. 2016) (quoting *Barger*, 346 N.C. at 659, 488 S.E.2d at 219).

52. Heckmann's and Liu's counterclaims for breach of the CDA seek redress for injuries to Sinova US. The claims allege that Gao breached the CDA by disclosing Sinova US's "market, technology and operation secrecy" to third parties. Heckmann and Liu have failed to allege that they suffered any special injury from Gao's alleged breach of the CDA.

53. Therefore, the Court concludes that Heckmann and Liu have failed to show that they have standing to assert a direct claim for breach of the CDA. Accordingly, Gao's motion to dismiss Heckmann's and Liu's breach of contract counterclaims for lack of standing, insofar as these counterclaims allege a breach of the CDA, is granted

and these claims are dismissed without prejudice. Gao's motion to dismiss is denied as to the 2012 Board Agreement and the 2014 Board Agreement.

### 2. Fraud

54. In their fraud counterclaims, Heckmann and Liu allege that Gao fraudulently induced Heckmann and Liu to enter into the 2014 Board Agreement by concealing that ANT was a marketable project that had been developed in the lab. Heckmann and Liu allege that, as a result of Gao's concealment, ANT was not included as a Common Project and they entered into a materially different agreement than they would have if they had known of ANT and its marketability.

55. As discussed above, Sinova US is not a party to the 2014 Board Agreement; rather, it is a contract between Heckman, Liu, and Gao. The Court concludes that, just as Heckmann and Liu have standing to assert a direct claim for breach of the 2014 Board Agreement, they likewise have standing to assert a direct claim that they were fraudulently induced into entering this agreement. As such, Gao's motion to dismiss Heckmann's and Liu's fraud counterclaims is denied.

## V.  CONCLUSION

56. For the foregoing reasons, the court **DENIES** Gao's motion to dismiss Sinova US's counterclaims and **GRANTS in part** and **DENIES in part** Gao's motion to dismiss Heckmann's and Liu's counterclaims as follows:

  A.  The Court **GRANTS** Gao's motion to dismiss Heckmann's and Liu's breach of contract counterclaims to the extent these claims are based on the CDA, and these claims are dismissed without prejudice.

B.     The Court **DENIES** Gao's motion to dismiss Heckmann's and Liu's breach of contract counterclaims to the extent these claims are based on the 2012 Board Agreement and the 2014 Board Agreement.

C.     The Court **DENIES** Gao's motion to dismiss Heckmann's and Liu's fraud counterclaims.

**SO ORDERED**, this the 16th day of July, 2018.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases