IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-11

No. 280A19

Filed 12 March 2021

IN THE MATTER OF: N.P.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 30 April 2019 by Judge J.H. Corpening, II in District Court, New Hanover County. Heard in the Supreme Court on 13 January 2021.

*Karen F. Richards for petitioner-appellee New Hanover County Department of Social Services.*

*Michelle FormyDuval Lynch for appellee Guardian ad Litem.*

*Peter Wood for respondent-appellant.*

MORGAN, Justice.

¶ 1    In this appeal from a termination of parental rights order, this Court is asked to determine whether the trial court had subject matter jurisdiction in the proceeding. Respondent-mother bases her argument contesting the trial court's authority on her assertions that (1) neither she, her daughter "Nancy," nor Nancy's father were residents of North Carolina and (2) any temporary emergency jurisdiction which the trial court may have obtained in the matter had expired prior to the filing of the

termination of parental rights petition.[1] After careful review of the unusual circumstances presented by this case, we conclude that the trial court here properly exercised subject matter jurisdiction concerning Nancy under the plain language of our state's Juvenile Code. Accordingly, we affirm the trial court's order terminating respondent-mother's parental rights to Nancy.

## I. Factual Background and Procedural History

In July 2017, respondent-mother, then seventeen years of age, was pregnant and living with her boyfriend and his family in Norfolk, Virginia. During the early portion of the month, while visiting Onslow County, North Carolina, respondent-mother went to see a doctor for prenatal care and was determined to be at risk for an immediate miscarriage. Respondent-mother was in labor as she was transported by helicopter to New Hanover Regional Medical Center in Wilmington, North Carolina. On 4 July 2017, Nancy was born twenty-three weeks prematurely, weighing one pound and four ounces, suffering from a hole in her heart, and needing a feeding tube to eat. As a result, Nancy required care from a variety of medical professionals, including a neurologist, an ophthalmologist, a cardiologist, and a pulmonologist. Respondent-mother remained at the hospital with Nancy after the child's birth.

---

[1] We employ a pseudonym for the child for ease of reading and to protect the identity of the juvenile.

Respondent mother's boyfriend, who was Nancy's father, returned home to Virginia after Nancy's birth, but joined respondent-mother and Nancy at the hospital for a temporary period beginning on 22 September 2017.[2] When Nancy's father and respondent-mother did not follow the proper feeding schedule for Nancy and had trouble providing proper care for the infant even with the help of hospital staff, the Onslow County Department of Social Services was contacted. Since the hospital where Nancy was receiving care was located in New Hanover County, the juvenile matter was transferred to the New Hanover County Department of Social Services (DSS) on 29 September 2017. As a result of the interrelated issues regarding Nancy's health and care, DSS took Nancy into its custody on 3 October 2017. On 3 October 2017, DSS filed a petition, which alleged that Nancy was neglected and dependent. Following an adjudication hearing in December 2017, the trial court adjudicated Nancy to be both neglected and dependent.

¶ 3     At a nonsecure custody hearing held on 11 October 2017, the trial court concluded that it "ha[d] emergency jurisdiction over the subject matter and the parties to this action and authority to enter this Order." When Nancy was discharged

---

[2] Initially, Nancy's father was not listed on her birth certificate, but he added his name to the birth certificate after the filing of the petition to terminate his and respondent-mother's parental rights. The parental rights of Nancy's father to the juvenile were also terminated, but he is not a party to this appeal.

from the hospital on 12 October 2017, DSS placed her in foster care in New Hanover County. On 9 November 2017, Nancy's father and respondent-mother entered into a case plan with DSS, agreeing to complete parenting classes, to complete psychological evaluations and follow any recommendations, and to maintain stable housing and employment. After the agreement was reached, both parents moved back to Norfolk, Virginia, where they continued to reside at the time of the filing of the termination of parental rights petition with the family of Nancy's father.

¶ 4    On 22 October 2018, DSS filed a petition to terminate the parental rights to Nancy of both respondent-mother and Nancy's father. After a hearing on 1 April 2019, the trial court found that grounds existed to terminate the parental rights of both parents on the bases of neglect, failure to make "reasonable progress . . . in correcting those conditions which led to the removal of the juvenile," and willful abandonment. N.C.G.S. § 7B-1111(1), (2), (7) (2019). To support these grounds, among other findings of fact which are not challenged by respondent-mother on appeal, the trial court found that respondent-mother (1) did not engage in parenting classes, (2) delayed her psychological evaluation, (3) did not complete recommended therapy, (4) did not verify her housing or income during the course of the proceeding, (5) missed or rescheduled numerous visits with Nancy, and (6) did not provide emotional or financial support for Nancy. The trial court additionally determined that it was in

the best interests of Nancy to terminate the parental rights of both parents. The trial court entered the order of termination on 30 April 2019. Respondent-mother gave written notice of appeal to this Court on 2 May 2019.

## II.    Analysis

### 1.  Standard of Review

¶ 5    "The existence of subject matter jurisdiction is a matter of law and cannot be conferred upon a court by consent." *In re K.J.L.*, 363 N.C. 343, 345–46 (2009) (extraneity omitted). "[A] court's lack of subject matter jurisdiction is not waivable and can be raised at any time," *id.* at 346, including for the first time upon appeal, *In re H.L.A.D.*, 184 N.C. App. 381, 385 (2007), *aff'd per curiam*, 362 N.C. 170 (2008). We review questions of law de novo. *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, 370 N.C. 553, 556 (2018).

### 2.  Pertinent Law

¶ 6    Absent subject matter jurisdiction a court has no power to act and any resulting judgment is void. *In re T.R.P.*, 360 N.C. 588, 590 (2006). "When the record shows a lack of [subject matter] jurisdiction in the lower court, the appropriate action on the part of the appellate court is to . . . vacate any order entered without authority." *State v. Felmet*, 302 N.C. 173, 176 (1981).

¶ 7 "In matters arising under the Juvenile Code, the court's subject matter jurisdiction is established by statute." *In re K.J.L.*, 363 N.C. at 345. The Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) is an overarching jurisdictional scheme intended to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody." N.C.G.S. § 50A-101 cmt. (2019); *see also In re L.T.*, 374 N.C. 567, 569 (2020) ("The trial court must comply with the UCCJEA in order to have subject matter jurisdiction over juvenile abuse, neglect, and dependency cases and termination of parental rights cases.").

> The UCCJEA applies to proceedings in which child custody is at issue, including those involving juvenile abuse, neglect, dependency and termination of parental rights; and a trial court must comply with its provisions to obtain jurisdiction in such cases. *See* N.C.G.S. §§ 50A-102(4), -201(a)–(b) (2017). Generally, North Carolina courts have jurisdiction to make a child custody determination if North Carolina is the home state of the child. N.C.G.S. § 50A-201(a)(1). " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C.G.S. § 50A-102(7) (2017).

*In re S.E.*, 373 N.C. 360, 364 (2020).

¶ 8 More specifically, in termination of parental rights matters, the North Carolina General Statutes provide:

> *The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion.* The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the age of the parent. *Provided, that before exercising jurisdiction under this Article, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201*, 50A-203, or 50A-204. The court shall have jurisdiction to terminate the parental rights of any parent irrespective of the state of residence of the parent. *Provided, that before exercising jurisdiction under this Article regarding the parental rights of a nonresident parent, the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201* or G.S. 50A-203, without regard to G.S. 50A-204 *and that process was served on the nonresident parent pursuant to G.S. 7B-1106.*

N.C.G.S. § 7B-1101 (2019) (emphasis added). Section 50A-201 of the General Statutes of North Carolina sets forth in four subparagraphs when "a court of this State has jurisdiction to make an initial child-custody determination." N.C.G.S. § 50A-201(a)(1) (2019). Section 50A-204 addresses when a court of this State has temporary emergency jurisdiction. N.C.G.S. § 50A-204 (2019). As pertinent to this appeal, subparagraph (a)(1) of N.C.G.S. § 50A-201 states:

> (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent

from this State but a parent or person acting as a parent continues to live in this State[.]

N.C.G.S. § 50A-201(a)(1). Once a court has made a child-custody determination under the provisions of section 50A-201, that court has exclusive, continuing jurisdiction over the determination until:

> (1) A court of this State determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or
>
> (2) A court of this State or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State.

N.C.G.S. § 50A-202 (2019).[3]

### 3. Application

Respondent-mother's sole argument on appeal is that the trial court lacked subject matter jurisdiction in this matter, although this position is premised on a series of related and overlapping contentions. First, while she acknowledges the appropriate exercise of the trial court's temporary emergency jurisdiction in the days just after Nancy's birth, respondent-mother asserts that "at some point after DSS

---

[3] Respondent-mother does not make a specific argument under section 50A-202.

took custody, that jurisdiction expired." Respondent-mother also contends that she and Nancy's father were residents of Norfolk, Virginia when Nancy was born and at least until some point after the date of the filing of the petition to terminate their parental rights to Nancy. Respondent-mother submits that the exercise of subject matter jurisdiction by the trial court here was improper under the terms of the UCCJEA. Respondent-mother also notes her own youth at the time of Nancy's birth.

¶ 10        Further, respondent-mother represents that the exercise of jurisdiction by the trial court in New Hanover County created

> an uphill battle complying with the case plan. She had no transportation and could not easily make it back and forth between her home state and the state with custody of Nancy for visits. She had trouble lining up services in Virginia when that state did not administer the case plan. Keeping her child in a state where she did not reside presented logistical and legal barriers that would not have existed if the parents and Nancy lived in the same state.

Respondent-mother goes on to contend that "[t]here are compelling public policy issues for not allowing a state that acquires temporary emergency jurisdiction to keep custody of a child indefinitely. At some point the child should be allowed to return to the state where the parents live." Finally, respondent-mother maintains that Nancy's case should have been transferred to Virginia, citing N.C.G.S. § 7B-903(a)(6) for the proposition that the trial court could have ordered DSS to "return the juvenile to the responsible authorities in the juvenile's home state." N.C.G.S. § 7B-903(a)(6) (2019).

¶ 11     Assuming, *arguendo*, that the existence of a temporary emergency regarding Nancy's welfare had expired at some point after the juvenile's birth and before the filing of the petition to terminate parental rights to Nancy, such a circumstance is of no consequence in light of the facts and procedures in the present case. We are not required to determine with exactness the juncture at which the temporary emergency regarding the child's well-being may have ended because the record reveals that, regardless of any temporary emergency jurisdiction exercised during the initial period of Nancy's life or during the time leading up to her adjudication as a dependent and neglected juvenile, the trial court had exclusive, original jurisdiction over all petitions and motions concerning termination of parental rights to Nancy pursuant to N.C.G.S. § 7B-1101 and in conformance with the UCCJEA. Section 7B-1101 properly focuses the question of subject matter jurisdiction on the custody, location, or residence of the subject *child* in a termination of parental rights proceeding rather than on the residential state of the *parents*. *See, e.g.*, *In re T.H.T.*, 362 N.C. 446, 450 (2008) (affirming that the *child's* best interests constitute "the 'polar star' of the North Carolina Juvenile Code"); *see also In re Montgomery*, 311 N.C. 101, 109 (1984). Respondent-mother incorrectly construes the applicable law regarding jurisdiction to be dictated by the residential location of the child's *parents*, instead of the residential

location of the *child* along with other factors consistent with the child's residential location which impact the child's best interests.

¶ 12        Likewise, section 7B-1101 states, inter alia, that a trial

> court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights *to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services* . . . in the district at the time of filing of the petition or motion. . . . Provided, that before exercising jurisdiction . . . , *the court shall find that it has jurisdiction to make a child-custody determination under the provisions of G.S. 50A-201* . . . .

N.C.G.S. § 7B-1101 (emphasis added). Similarly, section 50A-201 provides that "a court of this State has jurisdiction to make an initial child-custody determination only if . . . [t]his State is the *home state of the child* on the date of the commencement of the proceeding," N.C.G.S. § 50A-201(a)(1) (emphasis added), and " '[h]ome state' means the state *in which a child lived with* a parent or a *person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding*," N.C.G.S. § 50A-102(7) (2019) (emphasis added).

¶ 13        In the case at bar, the trial court made a finding of fact that Nancy "has lived in this state for her entire life. The Courts of the State of North Carolina have home

state jurisdiction over the child and at least one parent is a resident of this State."[4] Nancy was born in North Carolina and lived with foster parents in the state for the six months immediately before the filing of the termination of parental rights petition on 22 October 2018. For the entirety of her life, which was nearly sixteen months at that time, Nancy lived in North Carolina. These facts indicate that the trial court's determination that North Carolina was the home state for Nancy was supported by, and fully consistent with, both the UCCJEA and N.C.G.S. § 50A-201(a)(1).

¶ 14    With further regard to the operation of N.C.G.S. § 7B-1101, as noted above, Nancy was born in New Hanover County, North Carolina, had resided for her entire life in New Hanover County at the time of the filing of the petition to terminate respondent-mother's parental rights and was in the legal custody of DSS in New Hanover County at the time of the filing of the petition to terminate respondent-mother's parental rights.  Thus, every requirement for exclusive, original jurisdiction

---

[4] Although a trial court making specific findings of fact related to its jurisdiction under N.C.G.S. § 50A-201(a)(1) "would be the better practice," this Court has affirmed that the statute "states only that certain circumstances must exist, not that the court specifically make findings to that effect." *In re T.J.D.W.*, 182 N.C. App. 394, 397, *aff'd per curiam*, 362 N.C. 84 (2007). Although respondent-mother was a resident of Virginia when the termination of parental rights petition was filed on 22 October 2018, the record on appeal indicates that she relocated to North Carolina between that date and 3 December 2018 when the notice of hearing in the termination proceeding was filed, at which point her address was in Rocky Point, N.C. Likewise, both of the amended notices of hearing on the termination of parental rights petition, filed on 18 February 2019 and 25 March 2019, designate respondent-mother's address as being located in Rocky Point, N.C.

under N.C.G.S. § 7B-1101 was satisfied: (1) Nancy "reside[d] in, [was] found in, or [was] in the legal or actual custody of a county department of social services . . . at the time of filing of the petition or motion;" (2) North Carolina was the home state for Nancy pursuant to N.C.G.S. § 50A-201(a)(1); and (3) "process was served on [respondent-mother] pursuant to G.S. 7B-1106."[5] N.C.G.S. § 7B-1101. This proper exercise of jurisdiction by the trial court is buttressed by the lack of any motion made by any party to the proceedings concerning Nancy to end the tribunal's authority based upon the expiration or termination of the temporary emergency, or to transfer the tribunal's authority to an appropriate legal forum in the parents' residential state of Virginia. As a result, North Carolina's ongoing jurisdiction was exclusive and appropriate. Accordingly, Nancy was a juvenile over whom our state's courts could properly exercise subject matter jurisdiction in connection with a petition of termination of parental rights under our state's Juvenile Code.

¶ 15    In response to respondent-mother's representation that the transfer of her case plan to Virginia pursuant to N.C.G.S. § 7B-903(a)(6) would have improved her opportunity to successfully complete it, we note that the statute is inapposite here

---

[5] Respondent-mother has never disputed the fact "that process was served on [her] pursuant to G.S. 7B-1106." N.C.G.S. § 7B-1101.

and hence the transfer option was unavailable. The statute provides, in abuse,

neglect, and dependency proceedings, that

> [t]he following alternatives for disposition shall be
> available to any court exercising jurisdiction, and the court
> may combine any of the applicable alternatives when the
> court finds the disposition to be in the best interests of the
> juvenile:
>
> . . .
>
> (6) Place the juvenile in the custody of the department of
> social services *in the county of the juvenile's residence*. In
> the case of a juvenile who has legal residence outside the
> State, the court *may place the juvenile in the physical
> custody of the department of social services in the county
> where the juvenile is found so that agency may return the
> juvenile to the responsible authorities in the juvenile's home
> state.*

N.C.G.S. § 7B-903(a)(6) (emphasis added). As already discussed, at all times during

this matter, Nancy was found in New Hanover County, North Carolina and North

Carolina was her home state. Therefore, N.C.G.S. § 7B-903(a)(6) was not available to

be invoked in the instant case by the trial court.

¶ 16        As to respondent-mother's reference to her own youth at the time of Nancy's

birth, N.C.G.S. § 7B-1101 specifically states that "[t]he court shall have jurisdiction

to terminate the parental rights of any parent *irrespective of the age of the parent.*"

N.C.G.S. § 7B-1101 (emphasis added). Respondent-mother cites no legal authority to

the contrary and makes no actual argument on this point. Also, we must decline

respondent-mother's invitation to engage in public policy considerations here in light of the unambiguous and specific language chosen by the General Assembly in drafting and enacting the Juvenile Code of this state. Given the clarity of the statutes which pertain to subject matter jurisdiction as they apply to the present case, any such public policy concerns raised here should be directed to the state's legislative branch for contemplation. *See, e.g., State v. Whittle Commc'ns*, 328 N.C. 456, 470 (1991) ("[T]he general rule in North Carolina is that absent 'constitutional restraint, questions as to public policy are for legislative determination.'" (quoting *Gardner v. N.C. State Bar*, 316 N.C. 285, 293 (1986))).

### III.  *Conclusion*

In this juvenile matter, the trial court had exclusive, original jurisdiction over the termination of parental rights case regarding Nancy pursuant to the UCCJEA and N.C.G.S. § 7B-1101. Therefore, we affirm the trial court's order terminating respondent-mother's parental rights to Nancy.

AFFIRMED.