IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-902

Filed 19 September 2023

Perquimans County, No. 20CVD165

ALEXANDER N. ROOK, Plaintiff,

v.

DEBRA ANN ROOK, Defendant.

Appeal by defendant from judgment entered 31 March 2022 by Judge Meader W. Harriss III in Perquimans County District Court. Heard in the Court of Appeals 6 September 2023.

*Melissa L. Skinner, for the plaintiff-appellee.*

*Woodruff Family Law Group, by Jessica S. Bullock, for the defendant-appellant.*

*Rose & Johnson PC, by K. Brooke Johnson, for the defendant-appellant.*

TYSON, Judge.

Debra Rook ("Mother") appeals from a custody order granting joint custody to Mother and Alexander Rook ("Father") on 31 March 2022. The trial court lacked subject matter jurisdiction. We vacate the order and remand.

## I. Background

Mother and Father married on 22 February 2002. Thirteen years later, Mother and Father procreated one minor child ("the Child") born 18 April 2015. Mother and

Father resided in Perquimans County while they were married.

The Perquimans County Department of Social Services ("DSS") investigated Father in 2018 because the Child had allegedly been left in a locked vehicle, while Father exercised at the gym and shopped at an Ollie's Bargain Outlet. DSS determined Father had a lapse in judgment and closed the investigation.

In early 2019, Mother became concerned because Father continuously insisted upon showering with the Child. Mother purportedly observed the Child touching Father's erect penis on 7 March 2019. Four days later, Mother removed the Child and herself from the marital home and moved to Wake County.

Mother and Father entered into a Separation and Property Settlement Agreement on 28 March 2019. Mother and Father agreed for Mother to have legal and physical custody of the Child, and Father agreed to "accompanied visitation" with the Child "at times and locations agreed upon by the parties at minimum of twice a month for six (6) to ten (10) hour periods." The agreement specified neither Mother nor Father were permitted to leave North Carolina with the Child without first providing written notice to the other parent, exempting certain enumerated family members who reside in Virginia and Kentucky.

Mother filed a complaint for child custody and attorney's fees in Wake County on 11 December 2019.

Mother also filed a complaint and motion for a domestic violence protective order on 29 January 2020 in Wake County. An *ex parte* order of protection was

granted that day. A domestic violence protection order was granted on 10 June 2020.

Mother filed an amended complaint for absolute divorce, breach of contract, specific performance, and attorney's fees in Wake County on 29 May 2020. Father filed his answer on 4 August 2020, counterclaiming for an absolute divorce and asking the court to incorporate the separation agreement entered into on 28 March 2019.

On the day Mother filed her amended complaint for divorce, Mother also filed a notice of voluntary dismissal of her custody claim. Without alerting Father in writing, Mother moved with the Child to Utah in May of 2020. Mother filed a petition for custody in Salt Lake County, Utah, on 30 October 2020.

Father filed a motion to change venue from Wake County to Perquimans County for the pending divorce claims on 16 November 2020. In his motion, Father stated he believed Mother had moved with the Child to Utah. The motion also acknowledged Mother had denied living in Wake County in her reply to Father's counterclaims.

Father initiated this action by filing a complaint and motion for *ex parte* temporary custody in Perquimans County on 23 November 2020. The trial court entered an order denying Father's request for an *ex parte* temporary custody order on 24 November 2020, but the court scheduled the matter for a 30 December 2020 hearing on the issue of temporary custody.

A summons for Mother's Utah custody action was issued on 8 December 2020. Mother was served on 21 January 2021 with Father's Perquimans County custody

action, which is the subject of this appeal. On 22 January 2021, Mother filed a *pro se* motion to continue the temporary custody hearing and a "12(b)(1) Motion to Dismiss and Request for Judicial Conference" requesting that Father's Complaint be dismissed for lack of subject matter jurisdiction.

An Order was entered that directed judicial communication between the Perquimans County District Court and the Utah court on 27 January 2021. On 18 February 2021, Mother filed a notice of voluntary dismissal of her Rule 12(b)(1) motion to dismiss and request for judicial conference.

A "Consent Order on Subject Matter Jurisdiction" was entered on 25 February 2021, asserting "[t]he State of North Carolina has subject matter jurisdiction to determine custody of the minor child[.]"

A judgment of divorce was entered in Wake County on 15 March 2021, which incorporated the contents of Mother's and Father's Separation Agreement, granted primary custody of the Child to Mother, and which retained the provisions constricting interstate travel.

The trial court entered an order on 29 April 2021 requiring Mother to return the Child to North Carolina for the duration of the custody trial in Perquimans County. On 12 May 2021, Mother filed an answer, motion to consolidate, motion to modify prior custody order, and counterclaim in Perquimans County, asking for the two Perquimans County files to be consolidated regarding current custody of the Child and the custody order originally entered in Wake County on 15 March 2021.

The custody trial in Perquimans County began 18 May 2021. On 17 June 2021, the trial court entered an order granting Father supervised visitations with the Child and ordered Mother to bring the Child back to North Carolina in August when the trial was scheduled to resume. The trial court entered another Temporary Custody Order granting the parties joint legal and physical custody on an alternating weekly basis on 2 September 2021. The order required the minor child "be enrolled immediately in either Grace Montessori School in Elizabeth City, North Carolina or the Perquimans County Public School System."

The trial court entered a custody order granting joint custody to Mother and Father on 31 March 2022. Father was given the authority to make any final decisions regarding Child's "education, health, medical and dental care, religious, athletic and extra-curricular activities" if Mother and Father disagreed. Mother was prohibited from taking the Child outside North Carolina except to visit her family in Virginia. Father was instructed to enroll the Child in Grace Montessori Academy in Elizabeth City or the Perquimans County Public School System.

Mother timely appeals.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2021).

## III. Subject Matter Jurisdiction

Mother argues the trial court lacked subject matter jurisdiction over the Child's custody determination.

## A. Standard of Review

The issue of whether a trial court possessed subject matter jurisdiction is a matter of law, and we review questions of law *de novo*. *In re N.P.*, 376 N.C. 729, 731, 855 S.E.2d 203, 205-06 (2021) (citing *In re K.J.L.*, 363 N.C. 343, 345-46, 677 S.E.2d 835 (2009) and *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, 370 N.C. 553, 556, 809 S.E.2d 558, 560 (2018)).

If a trial court's basis for whether subject matter jurisdiction exists is erroneous, this Court may review the record to determine if subject matter jurisdiction exists. *Foley v. Foley*, 156 N.C. App. 409, 412, 576 S.E.2d 383, 385 (2003) (citing *Reece v. Forga*, 138 N.C. App. 703, 704, 531 S.E.2d 881, 882 (2000)).

## B. Analysis

"Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel." *Id.* at 411-12, 576 S.E.2d at 385 (citing *In re Davis*, 114 N.C. App. 253, 256, 441 S.E.2d 696, 698 (1994)).

North Carolina has adopted the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"). The UCCJEA includes four bases for a trial court to obtain subject matter jurisdiction over a custody determination:

> (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:

a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under G.S. 50A-207 or G.S. 50A-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

N.C. Gen. Stat. § 50A-201(a) (2021). *See also* N.C. Gen. Stat. § 50A-202(a) (2021) (explaining "a court of this State which has made a child-custody determination consistent with G.S. 50A-201 or G.S. 50A-203 has exclusive, continuing jurisdiction" unless certain determinations are made).

A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." N.C. Gen. Stat. § 50A-102(7) (2021).

The UCCJEA also requires the court who possesses subject matter jurisdiction over a child custody determination to make certain findings that another state is the more appropriate forum before declining to exercise its jurisdiction. *See* N.C. Gen.

Stat. §§ 50A-207 and 208 (2021). Mother argues the Utah court failed to make such findings.

A consent order does not waive challenges to subject matter jurisdiction, "and the jurisdictional requirements of the UCCJEA must be met for a court to have power to adjudicate child custody disputes." *Foley*, 156 N.C. App. at 411, 576 S.E.2d at 385 (citation omitted).

The comments contained in the UCCJEA's jurisdictional statute section also provide: "It should also be noted that since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective." N.C. Gen. Stat. § 50A-201, cmt. 2.

In *Foley*, this Court determined insufficient evidence in the record existed for the trial court to establish subject matter jurisdiction pursuant to the UCCJEA. *Foley*, 156 N.C. App. at 413-14, 576 S.E.2d at 386. The trial court had failed to include evidence concerning "whether the minor resided in North Carolina during the six months prior to the commencement of this proceeding" to determine if North Carolina was the child's home state. *Id.* The record also contained "no evidence the West Virginia court was a court having subject matter jurisdiction but declining to exercise it on the grounds North Carolina was the more appropriate forum." *Id.* This Court vacated the trial court's custody order and remanded the matter to the trial court to determine whether it possessed subject matter jurisdiction under one of the four

bases in the UCCJEA. *Id.*

Here, as in *Foley*, the record does not indicate whether North Carolina possessed subject matter jurisdiction over the custody determination of the Child. *Id.* The trial court found Mother had resided in Utah since May 2020, which is more than six months prior to the commencement of this Perquimans County child custody matter by Father in November 2020. According to the terms of the Separation Agreement, the Child was residing with Mother during that period. Further, the following colloquy occurred before the trial court regarding whether it possessed subject matter jurisdiction:

> THE COURT: So we have declared subject matter jurisdiction pursuant to a consent order in the –
>
> [FATHER'S COUNSEL]: In –
>
> THE COURT: – state of North Carolina, so that case is now –
>
> [FATHER'S COUNSEL]: That case –
>
> [MOTHER'S COUNSEL]: That's correct.

The record is devoid of any findings from the court in Utah determining whether North Carolina is the more appropriate forum and Utah's decision to decline to exercise its jurisdiction. *See* N.C. Gen. Stat. §§ 50A-207 and 208. Without this evidence, the trial court's custody order must be vacated for lack of subject matter jurisdiction and remanded. N.C. Gen. Stat. § 50A-201(a), cmt. 2; *Foley*, 156 N.C. App. at 413-14, 576 S.E.2d at 386.

- 9 -

## IV.    Conclusion

The trial court's custody determination of the Child on 31 March 2022 is vacated for lack of subject matter jurisdiction. *Foley*, 156 N.C. App. at 413-14, 576 S.E.2d at 386. The trial court must find and resolve evidence concerning the Child's home state in the six months prior to Father filing his motion for child custody in North Carolina. N.C. Gen. Stat. §§ 50A-201(a) and 102(7). In the alternative, the trial court must include findings from the court in Utah indicating its decision to decline to exercise its jurisdiction and its determination concluding North Carolina is the more appropriate forum. *See* N.C. Gen. Stat. §§ 50A-207 and 208.

The custody order is vacated, and the matter is remanded to the trial court for hearing to determine whether it possesses subject matter jurisdiction over this custody determination. *Foley*, 156 N.C. App. at 413-14, 576 S.E.2d at 386; N.C. Gen. Stat. §§ 50A-102(7) and 201(a). Mother's remaining arguments concerning the vacated order are dismissed as moot. *It is so ordered*.

VACATED AND REMANDED.

Judges CARPENTER and GORE concur.