IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-688

Filed 15 August 2023

Franklin County, No. 20CVS568

DEBORAH NASH EDWARDS, ROBERT W. COOPER, TIFFANY PATTERSON, WILLIAM H. RIGGAN, III, ZACHERY MYERS, MARTHA MILLER, EARL OLDHAM, DONALD K. DRIVER, DEBRA B. POLEO, PAULA WALTERS, NATALIE PETERSON and ANITA M. DRIVER, Plaintiffs,

v.

TOWN OF LOUISBURG, NORTH CAROLINA, a body politic, Defendant.

Appeal by plaintiffs from order entered 28 March 2022 by Judge Michael O'Foghludha in Franklin County Superior Court. Heard in the Court of Appeals 7 February 2023.

> *Larry E. Norman Attorney, PLLC, by Larry E. Norman, for plaintiffs-appellants.*

> *Cauley Pridgen, P.A., by James P. Cauley, III, and Emily C. Cauley-Schulken, for defendant-appellee.*

GORE, Judge.

Plaintiffs appeal the trial court's order granting summary judgment in favor of defendant Town of Louisburg. Plaintiffs lack standing to bring a claim for declaratory relief under N.C. Gen. Stat. § 100-2.1, and their claim under North Carolina's Open Meetings Law (§§ 143-318.9 – 143-318.18) is moot. We affirm.

**I.**

**A.**

On 13 May 1914, the Joseph J. Davis Chapter of the United Daughters of the Confederacy dedicated the monument of a Confederate soldier (the "Monument") in memory of Franklin's Confederate dead. The Monument was located on North Main Street in Louisburg, North Carolina, on a right-of-way owned by the State. The State does not claim ownership of the Monument itself. In an order denying plaintiffs' motion for preliminary injunction filed 20 July 2020, the trial court found that:

> 4. Rising tensions and demonstrations have recently surrounded similar monuments across North Carolina and the United States, resulting in citizens removing similar monuments on their own and resulting in injuries to citizens, law enforcement officers and property.
>
> 5. Based on similar protests and demonstrations and rising tensions in the Town of Louisburg during the month of June, 2020, the Louisburg Police Chief considered the situation around the Monument to constitute a police and public safety emergency and the Police Chief advised Town officials of his concerns.
>
> 6. On June 22, 2020, an emergency meeting of the Louisburg Town Council was held using the Zoom video conferencing platform, wherein the Town Council voted to remove and relocate the Monument.
>
> 7. The Town Council meeting was well attended and citizens were permitted to participate by submitting comments via Zoom and via email on the issue of the Monument.

Following the Council's decision at the 22 June 2020 emergency meeting, protests diminished. The soldier on top of the Monument was removed and put into storage while the Town investigated a suitable location to relocate the Monument

base. At a subsequent regular meeting held on 20 July 2020, the Town Council voted to ratify its prior decision to remove and relocate the Monument. The Monument was later moved to a section of the Town's cemetery where Confederate veterans are buried.

**B.**

Plaintiffs commenced this action on 23 June 2020 in Franklin County Superior Court seeking a temporary restraining order, preliminary injunction, and declaratory judgment regarding the respective rights and obligations of the parties concerning the Monument. Plaintiffs alleged the Town failed to comply with the terms and provisions of N.C. Gen. Stat. § 100-2.1 (Protection of monuments, memorials, and works of art) and Article 33C of the North Carolina General Statutes concerning "Meetings of Public Bodies." Plaintiffs also argued defendant violated the notice requirements for special meetings under the Town of Louisburg Code of Ordinances. As written in their complaint, plaintiffs sought a "[d]eclaratory judgment declaring that the actions of the Town of Louisburg ordering the removal or relocation of the Confederate Monument be declared void and of no effect."

The trial court did not issue a temporary restraining order. Defendant Town of Louisburg filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure, which the trial court denied by written order entered 28 July 2020. The trial court entered a separate order denying plaintiffs' motion for preliminary injunction the same day.

On 9 April 2021, defendant filed a motion for summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure. On 28 March 2022, the trial court entered an order granting summary judgment in favor of defendant on all claims.

**C.**

Plaintiffs timely filed written notice of appeal on 12 April 2022. The trial court's order granting defendant's motion for summary judgment is immediately appealable on grounds that such ruling is a final adjudication on the merits of all issues in controversy.

**II.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2022). "An issue is genuine if it may be maintained by substantial evidence." *Bernick v. Jurden*, 306 N.C. 435, 440, 293 S.E.2d 405, 409 (1982) (quotation marks and citation omitted). "[A] fact is material if it would constitute or would irrevocably establish any material element of a claim or defense." *Id.* (alteration in original) (citation omitted). "In ruling on a summary judgment motion, we consider the evidence in the light most favorable to the non-movant, drawing all inferences in the non-movant's favor." *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 563, 853 S.E.2d 698, 714 (2021) (quotation marks and citation omitted). "We review a trial court's

order granting or denying summary judgment de novo." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (citation omitted).

### III.

#### A.

Defendant raised several arguments in support of summary judgment on plaintiffs' claim for declaratory relief under N.C. Gen. Stat. § 100-2.1. The trial court granted defendant's motion but did not state the basis for its rationale. While there are several possible reasons for its ruling, "[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989) (citations omitted). We first consider whether the trial court's order should be affirmed because plaintiffs lack standing to pursue a claim for declaratory judgment under § 100-2.1.

"Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 823, 611 S.E.2d 191, 193 (2005) (citations omitted). "The North Carolina Constitution confers standing to sue in our courts on those who suffer *the infringement of a legal right . . . ." Comm. to Elect Dan Forest*, 376 N.C. at 608, 853 S.E.2d at 733 (emphasis added).

"A plaintiff must establish standing in order to assert a claim for relief." *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 625, 881 S.E.2d 32, 44 (2022) (citation omitted). "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction, and standing is required to seek a declaratory judgment . . . ." *Id.* at 652, 881 S.E.2d at 61 (Newby, C.J., concurring) (internal citation omitted).

Under North Carolina's Uniform Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 – 1-267, "an action is maintainable . . . only in so far as it affects the civil rights, status and other relations in the present actual controversy between parties." *Chadwick v. Salter*, 254 N.C. 389, 395, 119 S.E.2d 158, 162 (1961) (internal quotation marks omitted) (quoting *Calcutt v. McGeachy*, 213 N.C. 1, 4, 195 S.E. 49, 51 (1938)). However, "[t]he mere filing of a declaratory judgment is not sufficient, on its own, to grant a plaintiff standing . . . ." *United Daughters of the Confederacy*, 383 N.C. at 629, 881 S.E.2d at 46 (alteration in original) (internal citation and quotation marks omitted). "In other words, plaintiff is still required to demonstrate that it has sustained a legal or factual injury arising from defendants' actions as a prerequisite for maintaining the present declaratory judgment action." *Id.* at 629, 881 S.E.2d at 46-47.

Plaintiffs assert "ownership of the Monument itself" is a disputed issue of material fact precluding summary judgment. They offer various and conflicting positions about who owns the Monument—whether it be Franklin County, a specific

County commissioner, the town of Louisburg, or the Daughters of the Confederacy. In any event, disputed ownership is not a genuine issue of material fact precluding summary judgment in this case. Plaintiffs fail to show some "proprietary or contractual interest in the monument . . .", *Id.* at 629, 881 S.E.2d at 57, i.e., "a legally protected interest invaded by defendants' conduct." *Soc'y for the Hist. Pres. of the Twentysixth N.C. Troops, Inc. v. City of Asheville*, 282 N.C. App. 701, 704, 872 S.E.2d 134, 138-39, *rev. or reh'g granted and stay granted by* ___ N.C. ___, 880 S.E.2d 679 (2022). Through their responses to requests for admissions and in their depositions, each plaintiff party to this action either denies they have an ownership interest in the Monument or admits they do not own the Monument. Plaintiffs offer no alternative argument that they maintain the requisite standing to pursue a claim for declaratory relief on this basis.

Moreover, in addressing a substantially similar issue in *United Daughters of the Confederacy*, our Supreme Court observed that nothing "in N.C.G.S. § 100-2.1 . . . explicitly authorizes the assertion of a private cause of action for the purpose of enforcing that statutory provision." 383 N.C. at 638, 881 S.E.2d at 52. Here, like in *United Daughters of the Confederacy*, "even if N.C.G.S. § 100-2.1 could be interpreted to implicitly authorize the assertion of a private right of action, nothing in the relevant statutory language or the allegations contained in the . . . complaint suggests that plaintiff[s] would be 'in the class of persons on which the statute confers the right[.]'" *Id.* (second alteration in original) (quoting *Comm. to Elect Dan Forest*, 376

N.C. at 597, 853 S.E.2d at 726).

Unlike *United Daughters of the Confederacy*, the instant appeal arises from an order granting defendant's motion for summary judgment, not a dismissal for lack of subject matter jurisdiction. "Matters determined by a summary judgment, just as by any other judgment, are res judicata in a subsequent action." *T.A. Loving Co. v. Latham*, 15 N.C. App. 441, 444, 190 S.E.2d 248, 250-51 (1972) (quotation marks and citation omitted. By contrast, a dismissal under N.C. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "is not on the merits and thus is not given res judicata effect." *Cline v. Teich*, 92 N.C. App. 257, 264, 374 S.E.2d 462, 466 (1988) (emphasis omitted) (citation omitted). Under our precedent, "[s]ummary judgment is proper if the plaintiff lacks standing to bring suit." *Morris v. Thomas*, 161 N.C. App. 680, 683, 589 S.E.2d 419, 421 (2003) (citation omitted). Having determined that defendant is "entitled to summary judgment on the ground [p]laintiff[s] lacked standing, we need not address [p]laintiff[s'] additional assignments of error." *Northeast Concerned Citizens, Inc. v. City of Hickory*, 143 N.C. App. 272, 278, 545 S.E.2d 768, 772, *disc. rev. denied*, 353 N.C. 526, 549 S.E.2d 220 (2001).

**B.**

Plaintiffs also alleged "that the Defendant failed to provide proper notice of the meeting of the Town Council conducted on June 22, 2020[,] . . ." and "that such actions of the Defendant violated the terms and provisions of Article 33C of the North Carolina General Statutes concerning the 'Meetings of Public Bodies'" and local

ordinances.  Under North Carolina's Open Meetings Law (§§ 143-318.9 – 143-318.18):

> Any person may institute a suit in the superior court requesting the entry of a judgment declaring that any action of a public body was taken, considered, discussed, or deliberated in violation of this Article.  Upon such a finding, the court may declare any such action null and void.  Any person may seek such a declaratory judgment, and the plaintiff need not allege or prove special damage different from that suffered by the public at large.

N.C. Gen. Stat. § 143-318.16A(a) (2022).

Defendant raised several arguments in support of summary judgment on this issue, and the trial court did not specify the basis for its ruling.  We first address defendant's argument that "[a]ny deficiency in the procedures around the Council's actions at the meeting on June 22, 2020[,] were cured and made moot by the Council's unanimous decision at its regular meeting held on July 20, 2020."

> [A]ctions filed under the Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 through -267 (2005), are subject to traditional mootness analysis.  A case is considered moot when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.  Typically, courts will not entertain such cases because it is not the responsibility of courts to decide abstract propositions of law.

*Citizens Addressing Reassignment & Educ., Inc. v. Wake Cnty. Bd. of Educ.*, 182 N.C. App. 241, 246, 641 S.E.2d 824, 827 (2007) (cleaned up).

At a regular meeting held on 20 July 2020, the Town Council voted unanimously to ratify the prior action taken regarding relocation of the Monument. Plaintiffs never brought an independent challenge to the 20 July 2020 meeting, and

they never amended their complaint to challenge the Town Council's actions at the 20 July 2020 meeting. Even if plaintiffs had obtained their requested relief, a declaration that the actions of the Town Council taken on 22 June 2020 were null and void, this ruling could not "have any practical effect on the existing controversy." *Id.* (quotation marks and citation omitted). Thus, "[t]his issue presents only an abstract proposition of law for determination and is, therefore, also moot." *Id.* at 246, 641 S.E.2d at 828.

**IV.**

For the foregoing reasons, we affirm the trial court's 28 March 2022 order granting summary judgment in favor of defendant on all claims.

AFFIRMED.

Judge ZACHARY concurs.

Judge TYSON dissents by separate opinion.

No. COA 22-688 – *Edwards v. Town of Louisburg*

TYSON, Judge, dissenting.

The proper mandate is to reverse and remand with instructions for the trial court to enter dismissal of Plaintiffs' complaint or summary judgment for lack of standing without prejudice. *United Daughters of the Confederacy, N.C. Div. v. City of Winston-Salem*, 383 N.C. 612, 650, 881 S.E.2d 32, 60 (2022). I respectfully dissent.

## I.     Background

Defendant filed a stand-alone motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure, prior to filing an answer. The trial court denied the motion by written order entered 28 July 2020. Defendant later filed a Rule 56 motion for summary judgment on 9 April 2021. The trial court entered an order granting summary judgment in favor of Defendant on both claims of declaratory judgment and under N.C. Gen. Stat. § 100 on 28 March 2022. The trial court failed to neither make or enter findings nor state its reasoning for granting Defendant's motion, other than "no genuine issues as to any material facts" under either N.C. Gen. Stat. § 100-2.1 or under the "open meeting laws." *See* N.C. Gen. Stat. §§ 100-2.1; 143-318.9–143-318.18 (2021).

## II.     Standard of Review

This Court has held: "As with other issues of subject matter jurisdiction, standing is a question of law. Where, as here, the trial court decided the standing question without making jurisdictional findings of fact, we review the legal question of standing *de novo* based on the record before the trial court." *Shearon Farms*

*Townhome Owners Ass'n II v. Shearon Farms Dev., LLC*, 272 N.C. App. 643, 649, 847 S.E.2d 229, 234 (2020) (internal citations omitted).

## III. Standing

### A. Committee to Elect Dan Forest

Our Supreme Court extensively discussed the development of our State's standing doctrine as it applies to statutorily-granted rights in the case of *Committee to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 853 S.E.2d 698 (2021) ("*Dan Forest*"):

> In summary, our courts have recognized the broad authority of the legislature to create causes of action, such as "citizen-suits" and "private attorney general actions," even where personal, factual injury did not previously exist, in order to vindicate the public interest. *In such cases, the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute.* There is no further constitutional requirement because the issue does not implicate the concerns that motivate our standing doctrine. *See, e.g., Stanley* [*v. Department of Conservation and Development*, 284 N.C. 15, 28, 199 S.E.2d 641 (1973)]. *The existence of the legal right is enough.*
>
> Having surveyed the relevant English, American, and North Carolina law of standing, we are finally in a position to determine whether ... the North Carolina Constitution imposes an "injury-in-fact" requirement, as under the federal constitution. While our Court of Appeals has previously come to that conclusion, which was followed by numerous panels of that court, *see, e.g., Neuse River Foundation, Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113-15, 574 S.E.2d 48 (2002) (holding North Carolina law requires "injury in fact" for standing and applying

> *Lujan* [*v. Defenders of Wildlife*, 504 U.S. 555, 119 L. Ed. 2d
> 351 (1992)), we are not bound by those decisions and
> conclude our Constitution *does not include* such a
> requirement.

*Id.* at 599, 853 S.E.2d at 727-28 (emphasis supplied).

The Supreme Court also held the language unrelated to standing in *Stanley v. Department of Conservation and Development* cited above was "an aberration and must be considered dictum" in *Madison Cablevision, Inc. v. City of Morganton*, 325 N.C. 634, 645-48, 386 S.E.2d 200, 207-08 (1989). In *Dan Forest,* the Supreme Court also expressly abrogated any portion of this Court's opinion in *Neuse River Foundation, Inc. v. Smithfield Foods, Inc.* that was inconsistent with their analysis in *Dan Forest*. *Dan Forest*, 376 N.C. at 601 n.44, 853 S.E.2d at 729 n.44.

The Court held North Carolina's Constitution does not impose a requirement for a plaintiff or petitioner to allege an "injury in fact" when challenging the validity of or asserting the applicability of a statute, and particularly against disturbing a war grave marker or monument. N.C. Gen. Stat. § 100-2.1. Instead, the limits on standing imposed is "a rule of prudential self-restraint" in cases challenging the constitutionality of governmental action, to ensure our courts only address actual controversies. *Id.* at 608, 853 S.E.2d at 733.

Our Supreme Court clarified the requirements for a party to establish a specific claim under a statute:

> When a person alleges the infringement of a legal right
> arising under a cause of action at common law, a statute,

3

or the North Carolina Constitution, however, *the legal injury itself gives rise to standing*. The North Carolina Constitution confers standing to sue in our courts on those who suffer the infringement of a legal right, *because "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law."* N.C. Const. art. I, § 18, cl. 2. Thus, when the legislature exercises its power to create a cause of action under a statute, even where a plaintiff has no factual injury and the action is solely in the public interest, *the plaintiff has standing to vindicate the legal right so long as he is in the class of persons on whom the statute confers a cause of action.*

*Id.* at 608, 853 S.E.2d at 733 (emphasis supplied).

## B. *United Daughters of the Confederacy*

More recently, in *United Daughters of the Confederacy,* our Supreme Court reviewed and stated the specific requirements needed to establish standing to challenge under similar facts, and the Court held the proper remedy for lack of jurisdictional standing issues is to dismiss without prejudice:

A careful analysis of the amended complaint satisfies us that plaintiff has failed to identify any legal right conferred by the common law, state or federal statute, or the state or federal constitutions of which they have been deprived by defendants' conduct. . . .

Although the amended complaint claims that the local chapter was involved in raising funds to erect the monument and that it received permission from the County to place the monument outside the old county courthouse building in 1905, plaintiff does not allege that the local chapter or any of its members retained an ownership interest in the monument or had executed a contract with the County providing that the monument would remain upon the old courthouse property in perpetuity. As a

4

result, even construing plaintiff's allegations concerning the funding for and erection of the monument as true, the mere fact that the local chapter "funded and erected the [monument]" does not suffice to establish standing in the absence of an affirmative claim to have some sort of proprietary or contractual interest in the monument. This is particularly true given that the plaintiff's allegations that the City's actions violated various state and federal laws, which we address in further detail below, assume that the *County*, rather than plaintiff, owns the monument.

In addition, our taxpayer standing jurisprudence makes it clear that, "where a plaintiff undertakes to bring a taxpayer's suit on behalf of a public agency or political subdivision, his complaint must disclose that he is a taxpayer of the agency [or] subdivision," *Branch v. Bd. of Ed. of Robeson Cnty.*, 233 N.C. 623, 626 (1951) (citing *Hughes v. Teaster*, 203 N.C. 651 (1932)); *see also Fuller*, 145 N.C. App. at 395–96, and "allege facts sufficient to establish" either that "there has been a demand on and a refusal by the proper authorities to institute proceedings for the protection of the interests of the public agency or political subdivision" or that "a demand on such authorities would be useless." *Id*. Although plaintiff has included such assertions in its brief before this Court, no such allegations appear in the amended complaint. *See Davis v. Rigsby*, 261 N.C. 684, 686 (1964) (noting that "[a] party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive against the pleader. . . .

In the same vein, we hold that the amended complaint fails to allege sufficient facts necessary to establish associational standing. Although plaintiff argues that it is a "legacy organization whose purposes include 'historical, benevolent, memorial, [In addition, given that plaintiff did not advance this argument before the Court of Appeals, it is not permitted do so for the first time before this Court. *See Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309 (2001) (noting the longstanding rule that "issues and theories of a case not

raised below will not be considered on appeal;" see also N.C. R. App. P. 10(a) (providing that issues not raised in a party's brief are deemed abandoned).] educational and patriotic programs;'" that its charter "clearly and [un]equivocally gives it an articulated interest in the status and preservation of objects of remembrance such as the [m]onument;" that it "has succeeded to the interests of those deceased members of an affiliated chapter who were responsible for designing, funding, and erecting the [monument];" and that it has "a specific requirement for membership . . . that one is a lineal descendant of an individual who served in the government or the armed forces of the Confederacy," none of these factual allegations are raised in the amended complaint. In addition, the amended complaint does not identify any of plaintiff's individual members or describe how the legal rights of any of plaintiff's individual members have been violated. As a result, the amended complaint fails to allege facts sufficient to show that "the interests [plaintiff] seeks to protect are germane to the organization's purpose" or that its members "would otherwise have standing to sue in their own right." *River Birch Assocs.*, 326 N.C. at 130.

*United Daughters of the Confederacy*, 383 N.C. at 629-33, 881 S.E.2d at 47-49.

Taking all the above under consideration and after the Supreme Court's decision *Dan Forest,* a two-step test is used to determine whether a plaintiff has standing to challenge a legislative action. First, as set forth by *Dan Forest*, we must first determine if the relevant statute, here the Declaratory Judgment Act ("DJA"), confers on Plaintiff a cause of action. Plaintiff must show the DJA confers a cause of action generally and Plaintiff is among the class of persons upon whom the cause of action was conferred. *See id.* at 607-09, 853 S.E.2d at 733-34.

The second question becomes whether Plaintiff has satisfied the statutory

requirements under the DJA or other statute to bring a claim. *See id.* at 599, 608 n.51, 853 S.E.2d at 727-28, 733 n.51. Any alleged infringement of a legal right is sufficient to establish standing. Under *Dan Forest*, Plaintiff need not allege any "injury in fact." *Id.* at 599, 853 S.E.2d at 728. "[T]o the extent it implicates the doctrine of standing, our [Constitutional] remedy clause should be understood as *guaranteeing* standing to sue in our courts where a legal right at common law, by statute, or arising under the North Carolina Constitution has been infringed." *Id.* at 607, 853 S.E.2d at 733 (emphasis original), *see* N.C. Const. art. I, § 18.

### C. *Cmty. Success Initiative v. Moore*

Our Supreme Court more recently applied both *Dan Forest* and *United Daughters of the Confederacy* in *Cmty. Success Initiative v. Moore,* holding:

> The standing requirements articulated by this Court are not themselves mandated by the text of the North Carolina Constitution. *See Comm. To Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 599, 853 S.E.2d 698, 728 (2021) ("[T]he 'judicial power' provision [in Article IV] of our Constitution imposes no particular requirement regarding 'standing' at all."). This Court has developed standing requirements out of a "prudential self-restraint" that respects the separation of powers by narrowing the circumstances in which the judiciary will second guess the actions of the legislative and executive branches. *Id.*
>
> . . .
>
> To ensure the requisite concrete adverseness, "a party must show they suffered a 'direct injury.' The personal or 'direct injury' required in this context could be, but is not necessarily limited to, 'deprivation of a constitutionally guaranteed personal right or an invasion of his property

rights.' " *Forest*, 376 N.C. at 607-08, 853 S.E.2d at 733 (citations omitted).

. . .

The direct injury criterion applies even where, as here, a plaintiff assails the constitutionality of a statute through a declaratory judgment action. *See United Daughters*, 383 N.C. at 629, 881 S.E.2d at 46-47 ([P]laintiff is still required to demonstrate that it has sustained a legal or factual injury arising from defendants' actions as a prerequisite for maintaining the present declaratory judgment action.").

*Cmty. Success Initiative v. Moore*, __ N.C. __, __, __ S.E.2d __, __, (2023).

## IV.    Summary Judgment

"Jurisdiction is [t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it." *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 789-90 (2006) (citation and internal quotation marks omitted).  "The court must have personal jurisdiction and . . . subject matter jurisdiction [, which is] [j]urisdiction over the nature of the case *and* the type of relief sought, in order to decide a case." *Catawba Cty. v. Loggins*, 370 N.C. 83, 88, 804 S.E.2d 474, 478 (2017) (citation omitted) (emphasis supplied).

In *United Daughters of the Confederacy*, the trial court had granted the defendants' motions to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6) (2021) with prejudice.  383 N.C. at 650, 2022-NCSC-143, 881 S.E.2d at 60.

The superior court here entered conflicting orders in initially denying Defendant's Rule 12(b)(1) motion where Plaintiffs had maintained the burden to establish standing, while later allowing Defendant's Rule 56 motion for summary judgment presumably for lack of jurisdictional standing. *See* N.C. Gen. Stat. § 1A-1, Rule 56 (2021). Our Supreme Court previously held subject matter jurisdiction challenges are properly asserted under Rule 12(b)(1), instead of Rule 12(b)(6). *United Daughters of the Confederacy*, 383 N.C. at 650, 881 S.E.2d at 60 (citations omitted).

While there may be purported conflicting caselaw from this Court regarding issues of jurisdictional or subject matter standing being disposed of by summary judgment, the Supreme Court of North Carolina reviews challenges to subject matter jurisdiction through a Rule 12(b)(1) motion to dismiss, instead of under either a motion to dismiss under Rule 12(b)(6) or a motion for summary judgment under Rule 56. *Id.*

## V.   Without Prejudice

Our Supreme Court has held under similar facts: "when a complaint is dismissed for lack of subject matter jurisdiction, that decision does *not* result in a final judgment on the merits and does not bar further action by the plaintiff on the same claim." *Id.* (citations omitted).

In *United Daughters of the Confederacy,* the Supreme Court addressed a defendant's motion to dismiss for lack of subject matter jurisdiction. *Id.* The majority's opinion asserts the posture in the instant case on a motion for summary

9

judgment pursuant to Rule 56 is factually distinguishable from *United Daughters of the Confederacy,* citing *Landfall Grp. Against Paid Transferability v. Landfall Club*, 117 N.C. App. 270, 273, 450 S.E.2d 513, 515-16 (1994), where the "defendant met its summary judgment burden by showing that there is no genuine issue of material fact due to the lack of standing, [and] the burden shifted to [the] plaintiff to show that [a litigant] is a member of [the] defendant" group.

This presumption and conclusion mis-states binding precedent from our Supreme Court. *See Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985) (the Court of Appeals "acted under a misapprehension of its authority to overrule decisions of the Supreme Court of North Carolina and its responsibility to follow those decisions, until otherwise ordered by the Supreme Court" when it abolished two tort causes of action).

"[S]tanding is a 'necessary prerequisite to a court's proper exercise of subject matter jurisdiction[,]'" and is not a merits adjudication. *Willowmere Cmty. Ass'n v. City of Charlotte*, 370 N.C. 553, 561, 809 S.E.2d 558, 563 (2018) (citation omitted). The trial court's dismissal and entry of summary judgment for lack of subject matter jurisdiction is not a "final judgment on the merits." *United Daughters of the Confederacy*, 383 N.C. at 650, 881 S.E.2d at 60 (citations omitted).

## VI.    Conclusion

The trial court's order on summary judgment on standing jurisdiction is properly reversed and remanded to the trial court with instructions to enter the order

without prejudice. *Willowmere Cmty. Ass'n,* 370 N.C. at 561, 809 S.E.2d at 563; *Dan Forest*, 376 N.C. at 607-08, 853 S.E.2d at 733; *United Daughters of the Confederacy*, 383 N.C. at 650, 2022-NCSC-143, 881 S.E.2d at 60; *Cmty. Success Initiative*, __ N.C. at __, __ S.E.2d at __, I respectfully dissent.